UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #04-10384-PBS

_____

UNITED STATES

v.

DANIEL KAMEN

_____

**MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS**

## I.    INTRODUCTION.

On December 1, 2004, a United States Postal Inspector applied for, and was granted by Magistrate Judge Lawrence P. Cohen, a search warrant for the residence of the defendant Daniel Kamen ["Kamen"].  The warrant was executed on December 6, 2004, and allegedly resulted in the seizure of, among other things, videotapes containing child pornography and correspondence with an undercover Postal Inspection Service operation.  Kamen also allegedly made a number of oral statements and allegedly signed an inculpatory "Sworn Statement" following the execution of the warrant.

## II.    STATEMENT OF RELEVANT FACTS.

### A.    Application and Schedule A.

On December 1, 2004, Scott W. Kelley, a United States Postal Inspector, submitted an Application and Affidavit for Search Warrant.  *See Application, attached hereto as Exhibit 1*.  The

application stated:

> I Scott W. Kelley being duly sworn depose and say:
> I am a(n) U.S. Postal Inspector and have reason to believe that ... (X)
> on the property or premises known as
> The residence of Daniel Kamen, located at 82 Brick Kiln Road,
> Building 10, Apartment 104, Chelmsford, Massachusetts
> in the District of Massachusetts
> there is now concealed a certain person or property, namely ...
> see Schedule A
> which is ... property that constitutes evidence of the commission of a
> crime, contraband, the fruits of crime, or other items illegally
> possessed, property designed for use, intended for use, or used in
> committing a crime concerning a violation of Title 18 United States
> code, Section(s) 2252(a)(2) and (a)(4)(B).
> The facts to support a finding of Probable Cause are as follows:
> See Attached Affidavit.

*Id.*

Schedule A, the list of property to be seized, reads:

> 1. Records, documents, correspondence, notes, and/or any
> other materials relating to contact via mail, courier, and/or computer
> by Daniel Kamen with YBCVIDS@yahoo.com and/or YBCVIDS,
> P.O. Box 176, Clear Spring, MD 21722.
> 2. One padded mailing bag addressed to Dan Kamen, 82 Brick
> Kilm Rd, Building 10, Apartment 104, Chelmsford, MA 01824 with
> a return address of YBCVIDS, P.O. Box 176, Clear Springs, MD
> 21722.
> 3. Three VHS videotape, labeled "Kissing Cousins," "Boys
> will be Boys," and "Boys and Girls."
> 4. Documents relating to the use of credit card number
> 51766900025660 to purchase Internet access in March, 2003
> 6. Any and all visual depictions of minors engaged in sexually
> explicit conduct, as defined in Title 18, United States Code, Section
> 2256, in any format or media.
> 8. Records evidencing occupancy or ownership of the
> premises to be searched, including, but not limited to, utility and
> telephone bills, mail envelopes, and/or addressed correspondence.

*Schedule A*, *attached hereto as Exhibit 2.*[1]

The Application was signed by Scott Kelley and by Magistrate Judge Lawrence P. Cohen, indicating that the application was sworn and subscribed in his presence. *Exhibit 1.*

### B.    Affidavit.

The affidavit submitted along with the application is a 12-page document, signed by Scott W. Kelley and Magistrate Judge Cohen, indicating that it was sworn and subscribed before Magistrate Judge Cohen on December 1, 2004. *See Affidavit, attached hereto as Exhibit 3.*

The first ten paragraphs of the affidavit provide background and definitions. The affidavit then discusses the investigation of Daniel Kamen. According to the affidavit, law enforcement officers, investigating a company suspected of processing credit card transactions for subscriptions to child pornography web sites, obtained 16,000 records of customer transactions involving individuals in the United States. *Id.* at ¶12. They also identified 37,000 United States subscribers to these web sites. *Id.* at ¶13. The customer database indicated that Kamen had, on March 11, 2003, purchased "Internet access to sites known to contain child pornography" using a credit card. *Id.*

Postal inspectors then mailed a solicitation to Kamen's address, inviting him to become "a customer of one of the newest, best stocked companies when it comes to finding all of your video interests." *Id.* at ¶14. The solicitation included a list of different areas of interest. *Id.* Kamen allegedly responded by requesting more information concerning videotapes with "Preteen-Boys" and "Young Teen-Boys." *Id.* at ¶15. A postal inspector then mailed an order form along with a list of videos to Kamen. *Id.* at ¶16. In response, Kamen allegedly sent an envelope with an order for three such videos. *Id.* at ¶17. The list of videos mailed to Kamen described these videos as involving two

---

[1]    There is no #5 or #7 to Schedule A.

11-13 year old males; 8 to 16 year old males; and males and females about 12 years old. *Id.* at ¶18.

Kelley confirmed that Daniel Kamen was living and receiving mail at the address at 82 Brick Kiln Rd. which had been used in the correspondence. ¶¶21-22.

Kelley indicated that he would "oversee the controlled delivery of a padded mailing bag with $4.44 in postage," including the three videotapes described above, to Kamen. *Id.* at ¶23. Kelley indicated that, based on his training and experience, the videos depicted minors engaged in sexually explicit conduct as defined by 18 U.S.C. §2256. *Id.* at ¶¶24-26.

Kelley concluded:

> 27.  Based on the foregoing, I have probable cause to believe that there is, and after delivery of the above described videotapes will be, evidence of violations of Title 18, United States Code, Section 2252(a)(2) and (a)(4)(B) (receipt and possession of child pornography) located at the residence of Daniel Kamen, 82 Brick Kiln Rd, Building 10 Apartment 104, Chelmsford, Massachusetts, 01824.

*Id.* at ¶27.  On the application for the warrant, Magistrate Judge Cohen indicated that he had reviewed the "movie files" described in the affidavit and concluded that there was probable cause to believe that they depicted minors engaged in sexually explicit conduct. *Exhibit 1.*

**C.    Search Warrant.**

Magistrate Judge Cohen signed a Search Warrant at 1:55 p.m. on December 1, 2004. *Search Warrant, attached hereto as Exhibit 4.*  The warrant read in part:

> TO: <u>U.S. Postal Inspector Scott W. Kelley</u> and any Authorized Officer of the United States
> Affidavit(s) having been made before me by <u>U.S. Postal Inspector Scott W. Kelley</u> who has reason to believe that ... (X) on the premises known as ...
> The residence of Daniel Kamen, located at 82 Brick Kiln Road, Building 10, Apartment 104, Chelmsford, Massachusetts

in the District of Massachusetts
there is now concealed a certain person or property, namely ...
See Schdule [*sic*] A attached hereto
I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.
YOU ARE HEREBY COMMANDED to search on or before <u>12-11-2004</u>
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search in the daytime ... and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to <u>The Honorable Lawrence P. Cohen</u> as required by law.

*Id.* The warrant was signed and dated by Magistrate Judge Cohen.

### D.    Execution of Warrant.

The videotapes were delivered to Kamen by means of a "controlled delivery" on December 6, 2004. *USPIS Case Summary Report, attached hereto as Exhibit 5,* at 1. Kamen picked up the package containing the videotapes from his delivery collection box, and returned with it to his residence. *Id.* "After waiting five minutes the search warrant was executed." *Id.* Inspector Kelley knocked and announced, "at which time Kamen was provided with the search warrant and the items to be seized." *Memorandum of Interview, attached hereto as Exhibit 6,* at 1. Kamen was then questioned, and allegedly made a number of inculpatory statements. *Id.* He also allegedly wrote and signed an inculpatory sworn statement. The following items were seized from the residence: (1) a letter from the undercover operation; (2) a receipt for rent; (3) three videos; (4) mailing bag; (5) pictures of minors; and (6) a digital camera.[2]

---

[2]     The minors in the photographs seized were clothed; the pictures on the digital camera were later determined to be non-pornographic.

### III.     THE SEARCH WARRANT DID NOT ESTABLISH PROBABLE CAUSE.

#### A.     Summary of Applicable Law.

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation...."  An application for a search warrant "must demonstrate probable cause to believe that (1) a particular person has committed a crime (the 'commission' element), and (2) enumerated evidence of the offense will be found at the place to be searched (the 'nexus' element)." *United States v. Beckett*, 321 F.3d 26, 31 (1st Cir. 2003). In analyzing the sufficiency of an affidavit supporting a search warrant, a court considers whether the "totality of the circumstances" stated in the affidavit demonstrates probable cause to search the premises. *United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997).

Under the exclusionary rule, evidence obtained in the absence of probable cause is usually excluded in order to deter further violations of the Fourth Amendment. *United States. v. Brunette*, 256 F.3d 14, 19 (1st Cir. 2001).  The exclusionary rule does not apply in certain circumstances where an objectively reasonable law enforcement officer relied in good faith on a defective warrant. *Id.*, *citing United States v. Leon*, 468 U.S. 897, 920-921 (1984).  "While *Leon* restricts the application of the exclusionary rule, it does not eliminate it." *United States v. Capozzi*, 347 F.3d 327, 332 (1st Cir. 2003).  In particular, the good-faith exception does not apply:

> (1) where the magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for a reckless disregard for the truth, or (2) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*Id.*

**B.    Application of Law to Facts.**

It is difficult to imagine a more straight-forward probable cause analysis. The application stated, in no uncertain terms, that "there **is now concealed**" at 82 Brick Kiln Road the items included in Schedule A, which included "[o]ne padded mailing bag" and "[t]hree VHS videotape[s]". *Exhibit 1* (emphasis added); *Exhibit 2*. At the time Officer Kelley signed the application on December 1, 2004, it was absolutely clear that this was not true. The videotapes had not yet been sent to Mr. Kamen, a fact disclosed in the Application, *see Exhibit 3* at ¶24 ("videotape ... **will be** delivered") (emphasis added). Therefore there could not be probable cause to believe, at that time on December 1, that the videotape or the mailing bag was already at 82 Brick Kiln Road. It is clear that the Magistrate Judge's conclusion that there was "probable cause to believe that the person or property so described **is now concealed** on the person or premises," *Exhibit 4*, was wrong.

It was not objectively reasonable for the officer to rely on the warrant, given the obvious lack of probable cause. The warrant not only "lack[ed] ... indicia of probable cause" to believe that the videotapes were then located at 82 Brick Kiln Road, but, in fact, disclosed that the videotapes **were not** then located there. The officer in this case had actual knowledge that, at the time the warrant was issued, there was no probable cause. Therefore, the fruits of the unlawful search are not protected by the *Leon* good-faith doctrine and must be suppressed.

**IV.    THE WARRANT IN THIS CASE IS NOT AN ANTICIPATORY WARRANT.**

**A.    Introduction.**

The government may argue that the warrant in this case is an anticipatory warrant, issued based on a finding that probable cause would exist at some future time. This argument is precluded

by the facts in this case, as there was nothing in the warrant or affidavit to establish that the warrant was an anticipatory warrant.

### B.    Summary of Applicable Law.

An anticipatory warrant is one that is "issued in advance of the receipt of particular property at the premises designated in the warrant." *United States v. Ricciardelli*, 998 F.2d 8, 10 (1st Cir. 1993). The First Circuit has emphasized that an anticipatory warrant "must clearly say when it takes effect." *United States v. Gendron*, 18 F.3d 955, 965 (1st Cir. 1994). Therefore, anticipatory warrants must contain a description of the "triggering event" after which the warrant will be executed. For example, in *Gendron* the warrant authorized a search "*after delivery by mail to and receipt by* [the defendant]." *Id.* at 965 (emphasis in original). The warrant in *Ricciardelli* stated that it will "not be effective until after delivery by mail to and receipt by [the defendant] of the ... package containing the videotape." 998 F.2d at 9.

As discussed below, some courts have held that, in certain circumstances, the failure of the warrant itself to specify the triggering condition may not be fatal if the triggering condition is specified in the affidavit. *United States v. Hugoboom*, 112 F.3d 1081, 1087 (10th Cir. 1997) (affidavit stated that warrant would be executed after delivery); *United States v. Moetamedi*, 46 F.3d 225, 227 n.1 (2d Cir. 1995) (affidavit stated that execution was "contingent upon" delivery, and that warrant would be executed fifteen minutes after delivery); *United States v. Tagbering*, 985 F.2d 946, 950 (8th Cir. 1993) (affidavit stated that warrant "would not" be executed until after delivery); *United States v. Rey*, 923 F.2d 1217, 1221 (6th Cir. 1991) (affidavit stated that execution would be "subsequent to the delivery of the package tomorrow").

### C.     Application of Law to Facts.

The search warrant in this case was not an anticipatory warrant. The officer may have intended to seek an anticipatory warrant and the magistrate judge may have thought he was issuing an anticipatory warrant, but there is simply nothing in the warrant, the application, or the affidavit that would support this conclusion.

The application states that "there is now concealed" evidence related to a crime at 82 Brick Kiln Road. It says nothing about the execution being delayed pending any subsequent event. The affidavit does mention the fact that the videotapes will be delivered within ten days, *Affidavit* at ¶23, but nowhere states that any warrant would only be executed following that delivery. Unlike the vast majority of cases in this area, the affidavit does not give any indication of when the warrant will be executed or specify that it is contingent upon delivery. On the contrary, Kelley concludes that "I have probable cause to believe **that there currently is**, and after delivery of the above described videotapes will be, evidence of violations [of 18 U.S.C. §2252(a)(2) and (a)(4)] located at the residence of Daniel Kamen." *Id.* at ¶27 (emphasis added). The plain meaning of this sentence is that probable cause existed even prior to the delivery of the videotapes, and therefore that there would be no need to wait until the videotapes were delivered to execute the warrant. This was not true.

Finally, the warrant itself gives no indication that it is an anticipatory warrant. It states merely that it is a "Search Warrant," finds that there "is **now concealed** a certain person or property" at 82 Brick Kiln Road, and contains no reference to any triggering condition that must occur before the warrant can be executed. In short, there is nothing to indicate to a reasonable reader of the application, the affidavit, or the warrant itself that the warrant cannot be executed until after the delivery of the videotapes. Consequently, the warrant is not an anticipatory warrant. To support a

regular, non-anticipatory, warrant, probable cause at the time of issuance was required and, as argued above, was lacking. Therefore, the fruits of the search must be suppressed.

## V.    THE WARRANT IN THIS CASE IS INVALID AS IT DID NOT CLEARLY SPECIFY THE TRIGGERING CONDITION.

### A.    Introduction

Even if the Court determines that the warrant in this case was an anticipatory warrant, it is nonetheless invalid. The warrant and the affidavit fail to spell out the triggering condition with the specificity required by the Fourth Amendment.

### B.    Summary of Applicable Law.

The First Circuit has explained, with respect to anticipatory warrants, that:

> [M]agistrates who are asked to issue such warrants must be particularly vigilant in ensuring that the opportunities for exercising unfettered discretion are eliminated. To satisfy these concerns, the magistrate must set conditions governing an anticipatory warrant that are "explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents."

*Ricciardelli*, 998 F.2d at 12, *quoting United States v. Garcia*, 889 F.2d 699, 703-704 (2d Cir. 1989). The court explained that "the contraband must be on a sure and irreversible course to its destination, and a future search of the destination must be made **expressly contingent** upon the contraband's arrival there." *Id.* (emphasis added). The court reiterated this requirement in *Gendron*, where then-Chief Judge Breyer wrote that: "a warrant must clearly say when it takes effect." 18 F.3d at 965.

In *Ricciardelli*, the court found that a condition -- even though it was included on the face of the warrant -- was ambiguous because it did not condition execution of the warrant on delivery of the videotape to the premises to be searched. 998 F.2d at 13. The court further found that the

fruits of the search did not fall under the *Leon* good-faith exception as the defectiveness of the warrant resulted from "non-technical errors of a kind that a reasonably prudent officer would (or should) have recognized." *Id.* at 15. It wrote:

> In connection with the first prong of the test, we find, without serious question, that the defects on the warrant's face were apparent enough that the postal inspectors should have realized that it did not comport with the Fourth Amendment. **The law was settled that the conditions governing the execution of anticipatory warrants must be explicit, clear, and narrowly drawn. The instant warrant plainly did not satisfy these criteria**; and, furthermore, the principal omission in the warrant--the lack of any requirement that the contraband arrive at the premises--was both glaring and easily correctable. Examining the postal inspectors' actions in this light, it is crystal clear that they could, and should, have asked the magistrate to condition the search of appellant's home on the delivery of the videotape there; failing both to insert this condition and to recognize the consequences of its omission constituted objectively unreasonable conduct.

*Id.* at 16 (emphasis added). The court therefore found that suppression was warranted. *Id.*

## C. Application of Law to Facts.

To the extent that the Court construes it as an anticipatory warrant, the warrant is invalid as lacking the requisite specificity as to when it will be executed. Reading the warrant and the affidavit, one might guess that the warrant would probably not be executed until after the videotapes were delivered, but that condition is certainly not specified anywhere on the face of the warrant or in the affidavit. The requirement of specificity is not met when one must infer the conditions on the execution of the warrant from ambiguous statements buried in the affidavit. The First Circuit has explained that the contingency must be made "express," "explicit," and "clear." That was not done here, and therefore the warrant was invalid.

Just as the officers in *Ricciardelli* were not justified under *Leon* in relying on a warrant that

included a fatally ambiguous triggering condition, here the officers were not justified in relying on a warrant and affidavit that included no explicit triggering condition at all. It is "crystal clear" that Kelley could have asked the magistrate judge to condition the warrant on the delivery of the videotapes, and that he did not do so. This error was "both glaring and easily correctable." Therefore, as the execution of the warrant was objectively unreasonable, the fruits of the illegal search must be suppressed.

## VI.    THE AFFIDAVIT CANNOT CURE THE DEFECTS IN THE WARRANT.

### A.    Introduction.

Even if the court were to conclude that the triggering condition is set forth with sufficient particularity in the affidavit, the execution of the warrant was nonetheless invalid as the affidavit was not attached to the warrant and was not presented to Mr. Kamen at the time of execution.

### B.    Summary of Applicable Law.

In *Groh v. Ramirez*, 540 U.S. 551 (2004), the Supreme Court held that a warrant that is otherwise invalid under the Fourth Amendment for a lack of particularity can be cured by an affidavit that specifies the items to be seized, but only if the affidavit accompanies the warrant. *Id.* at 563. While the First Circuit has not yet addressed the issue, the Ninth Circuit has concluded, based on *Groh*, that where a triggering condition is not set out in the search warrant itself but included only in the affidavit in support of the warrant, the affidavit must be presented to the occupants of the residence being searched. *United States v. Grubbs*, 377 F.3d 1072 (9th Cir. 2004), *amended on denial of rehearing*, 389 F.3d 1306, *cert. granted by* 126 S.Ct. 34 (2005).

The warrant in *Grubbs* was on a regular search warrant form, with only the hand-written

word "Anticipatory" to indicate that it was an anticipatory warrant. *Id.* at 1074. The warrant did not

include any reference to the triggering condition. *Id.* The affidavit specified that execution of the

warrant would not occur until the videotapes were received and taken into the residence. *Id.* The

defendant was provided with a copy of the search warrant at the time of the execution, but was not

provided a copy of the affidavit, even though the executing officer had a copy with him at all times.

*Id.* at 1075. The Ninth Circuit found that the warrant was invalid as it did not include a triggering

condition, and that this invalidity was not "cured" by the affidavit because the affidavit was not

presented to the defendant. *Id.* at 1078. It concluded:

> We believe that our prior cases unambiguously require officers to
> present any curative document--be it an affidavit, attachment, or other
> instrument that supplies the particularity and specificity demanded by
> the Fourth Amendment--to the persons whose property is to be
> subjected to the search. To the extent that there is any question that
> our cases have adopted that rule, we do so explicitly now.
> Anticipatory search warrants are invalid absent "clear, explicit, and
> narrow" triggering conditions.... **Those triggering conditions may
> be listed either in the warrant itself or in attached documents, but
> whatever document contains them must be presented to the
> person whose property is being searched.** Absent such
> presentation, individuals would "stand [no] real chance of policing
> the officers' conduct," because they would have no opportunity to
> check whether the triggering events by which the impartial magistrate
> has limited the officers' discretion have actually occurred.... In short,
> unless the officers "present" the document containing the triggering
> events necessary to render an anticipatory search warrant operative,
> the search warrant is constitutionally invalid. In the absence of a
> proper presentation, "the search is rendered illegal because the
> warrant neither limits [the officers'] discretion nor gives the
> homeowner the required information."

*Id.* at 1078-79 (emphasis added) (citations omitted).[3] The court therefore suppressed: "*all* evidence

---

[3]      The Circuits are apparently split on the issue of whether a triggering condition
contained in the affidavit can cure any defect in the warrant itself if the affidavit is not presented to
the person whose property is being searched. The Supreme Court has granted certiorari in the

obtained during that search ... includ[ing] all of the evidence seized after the initial entry, as well as all of [the defendant's] statements, all of which were taken either during the illegal entry or as a direct causal result of it." *Id.* at 1079 (emphasis in original).

### C.    Application of Law to Facts.

This rationale given by the Ninth Circuit in *Grubbs* is fully applicable here.[4]  There is no evidence that Mr. Kamen was provided with or shown a copy of the affidavit at the time of the search.  There is no evidence that the affidavit was physically attached to the warrant.  Inspector Kelley's memorandum indicates only that Mr. Kamen was provided with the warrant itself and the list of items to be seized.  *See Exhibit 6* at 1.  In light of the obvious deficiencies on the face of the warrant, it was necessary for the limiting document, the affidavit, to be present and displayed to Mr. Kamen.  Otherwise, Mr. Kamen would have no idea that the search was not valid if, for example, the officers attempted to search his residence prior to the delivery of the videotapes.  He would assume, from looking at the warrant, that the officers were acting within parameters approved by an impartial magistrate, when in fact they would not be.  As the Supreme Court wrote in *Groh*, a properly drafted warrant "assures the individual whose property is searched or seized of the lawful

_____

*Grubbs* case.  126 S.Ct. 34 (2005).  Oral argument was held on January 18, 2006.

The respondent in *Grubbs* has also argued to the Supreme Court that all anticipatory warrants are unconstitutional under the Fourth Amendment.  While this argument is foreclosed before this Court because of binding First Circuit precedent, Mr. Kamen -- for the purpose of preserving his appellate rights -- likewise argues that the warrant in this case was invalid because the Fourth Amendment bars anticipatory warrants.

[4]    While it is not material to the discussion here, it is worth noting that the search warrant in *Grubbs* at least had the word "anticipatory" written on the warrant.  There was nothing on the warrant here to indicate that it was an anticipatory warrant.  As argued above, there is simply no reason to consider the warrant in this case an anticipatory warrant at all, even though the warrant fails analysis as an anticipatory warrant as well.

authority of the executing officer, his need to search, and the limits of his power to search." 540 U.S. at 561, *quoting United States v. Chadwick*, 433 U.S. 1, 9 (1977). Here, the only documents that could have conveyed this information to Mr. Kamen were never shown to him. Therefore, the affidavit cannot cure the warrant's failure to specify the triggering condition, and the fruits of the unlawful search must be suppressed.

## VII.    CONCLUSION.

For the reasons stated above, the fruits of the officer's unlawful search of Mr. Kamen's residence should be suppressed.

Respectfully submitted,
**DANIEL KAMEN**
By his attorneys,

/s/ Charles W. Rankin
_____
Charles W. Rankin, BBO #411780
Jonathan Harwell, BBO #662764
Rankin & Sultan
151 Merrimac Street
Boston, MA 02114
(617) 720-0011

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 17, 2006

/s/ Charles W. Rankin
_____
Charles W. Rankin

AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

_____ DISTRICT OF Massachusetts _____

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

The residence of Daniel Kamen, located at 82 Brick Kiln
Road, Building 10, Apartment 104, Chelmsford,
Massachusetts

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER: 04- m00082 - LPC

I _____ Scott W. Kelley _____ being duly sworn depose and say:

I am a(n) _____ U.S. Postal Inspector _____ and have reason to believe
                              Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

The residence of Daniel Kamen, located at 82 Brick Kiln Road, Building 10, Apartment 104, Chelmsford, Massachusetts

in the _____ District of _____ Massachusetts _____
there is now concealed a certain person or property, namely (describe the person or property to be seized)
see Schedule A

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, or other items illegally
possessed, property designed for use, intended for use, or used in committing a crime

concerning a violation of Title _____ 18 _____ United States code, Section(s) _____ 2252 (a)(2) and (a)(4)(B) _____
The facts to support a finding of Probable Cause are as follows:

See Attached Affidavit

I have reviewed the movie files described in the attached affidavit, and find that there is probable cause to believe that they
depict minors engaged in sexually explicit conduct, as defined in 18 U.S.C. Section 2256.

_Lawrence P. Cohen_
Lawrence P. Cohen
U.S. Magistrate Judge

Continued on the attached sheet and made a part hereof.        ☒ Yes    ☐ No

_Scott W. Kelley_
Signature of Affiant

Sworn to before me, and subscribed in my presence

_December 1, 2004_                        at    Boston, Massachusetts            002
Date                                              City and State

Lawrence P. Cohen, U.S. Magistrate Judge                      _Lawrence P. Cohen_
Name and Title of Judicial Officer                            Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

**EXHIBIT TWO**

Schedule A

1.  Records, documents, correspondence, notes, and/or any other materials relating to contact via mail, courier, and/or computer by Daniel Kamen with <u>YBCVIDS@yahoo.com</u> and/or YBCVIDS, P.O. Box 176, Clear Spring, MD 21722.

2.  One padded mailing bag addressed to Dan Kamen, 82 Brick Kiln Rd, Building 10, Apartment 104, Chelmsford, MA 01824 with a return address of YBCVIDS, P.O. Box 176, Clear Springs, MD 21722.

3.  Three VHS videotape, labeled "Kissing Cousins," "Boys will be Boys," and "Boys and Girls."

4.  Documents relating to the use of credit card number 51766900025660 to purchase Internet access in March, 2003.

6.  Any and all visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, in any format or media.

8.  Records evidencing occupancy or ownership of the premises to be searched, including, but not limited to, utility and telephone bills, mail envelopes, and/or addressed correspondence.

**015**

**EXHIBIT THREE**

## AFFIDAVIT

I, Scott W. Kelley, being duly sworn, depose and state the following:

1.  I am a Postal Inspector of the United States Postal Inspection Service, having been appointed to this position in September 2003.  I am assigned to the Boston Division and responsible for the investigation of various postal crimes, including violations of Title 18, United States Code, and Section 2251-2252A, which pertain to the sexual exploitation of children.  Prior to my appointment as a United States Postal Inspector, I was a sworn Police Officer in Brockton, Massachusetts, and investigated child pornography cases and various sexual related offenses for 3 years.  I have received training in the investigation of those cases by attending numerous seminars and courses.

2.  I have reviewed the case files regarding this investigation.  All of the facts reported in this affidavit are of my personal knowledge unless otherwise stated.

3.  I submit this affidavit in anticipation and support of an application for a search warrant.  I have not included each and every fact known to me regarding this investigation, but rather have included only those facts necessary to establish probable cause for obtaining the search warrant.

4.  The premises for which I seek a search warrant is the residence of Daniel Kamen, 82 Brick Kiln Road, Building 10, Apartment 104 in Chelmsford, Massachusetts.  The **003**

1

residence is described as multi-family condominium. The condominium complex is named "The Meadows." Building number "10" is clearly posted in blue letters on a sign stating "Dukes" directly in front of the residence. The building is a three-story dwelling with grey vinyl siding. The front of the building contains a glass door with the number "10" in gold letters. Apartment 104 is located on the ground floor of the building. The door is green in color with the number "104" defined in black letters. There are two gold locks located to the left side of the door.

<u>**Relevant Statutes**</u>

5.    Title 18, United States Code, Section 2252, makes it illegal for any person to knowingly transport, ship, receive, distribute, reproduce for distribution, sell, possess with intent to sell, or possess visual depictions that affect interstate commerce, if: (1) the production of such visual depiction involves the use of a minor engaged in sexually explicit conduct; and (2) such visual depictions is of such conduct.

6.    Title 18, United States Code, Section 2256 provides the definitions for the section 2252. A "minor" is any person under the age of 18 years old.  "Sexually explicit conduct" includes actual or simulated sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal), bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person.  "Producing" means producing,

004

directing, manufacturing, issuing, publishing or advertising. A "visual depiction" includes undeveloped film and videotape, and data stored on a computer, computer disk or by any electronic means which is capable of conversion into a visual image.

7.    In this affidavit, I will refer to any individual under the age of eighteen as a child or minor, and any visual depictions of a child or minor engaging in sexually explicit conduct as defined in Title 18, United States Code, Section 2256 as child pornography.

### Background

8.    Based on my training and experience, I know that collectors of child pornography maintain and possess their materials, including films, videotapes, and electronic storage media, correspondence, and source information within a private and secure location, such as their residence. They typically retain their materials and related information for many years. They often seek to correspond with other collectors to share information and trade material in an effort to increase or enhance their collection.

9.    My training and experience with similar cases also indicates that collectors of child pornography rarely destroy correspondence from other collectors unless they suspect their activities will be uncovered by law enforcement authorities or others. These collectors sometimes attempt to conceal their correspondences and    **005**

3

records of orders and sources. They have been known to use assumed identities and post office boxes addresses in an attempt to conceal their activities. This behavior has been documented by Postal Inspectors and other law enforcement officials involved in the investigation of child sexual exploitation cases throughout the country.

10. Because this investigation involves violations of both State and Federal law, assistance has been sought and will be provided by both the local and State Police assigned to investigate crimes against children.

## BASIS OF INVESTIGATION

11. Beginning in March 2003, Postal Inspectors from the New Jersey/Caribbean Division, in response to a request from the United States Attorney's Office for the District of New Jersey, partnered with the Bureau of Immigration and Custom Enforcement (BICE) Agents, and with other law enforcement agencies. The task force initiated an investigation into a global child pornography enterprise. The investigation resulted in the identification of a company known as Regpay. Regpay's principles were located in Belarus and Latvia. Regpay used a credit card processor, Iserve/Connections USA, located in Ft. Lauderdale, Florida, to process customer credit card transactions for subscriptions to child pornography web sites.

12. In June, 2003, federal search warrants were executed by the task force on the offices of Iserve/Connections USA. Additional search warrants were

**006**

4

served on various computer servers throughout the country associated with Iserve/Connections USA and Regpay.  As a result of these searches, a total of 16,000 customer records/transactions of individuals residing in the United States have been seized.  BICE agents, in an undercover capacity, subscribed to the web sites related to the 16,000 records/transactions.  The vast majority of the web sites featured child pornography.  A few of the web sites contained child erotica material.

13.  BICE agents, at their Cyber Smuggling Center (C-3), Fairfax, Virginia, compiled the database of the 37,000 United States subscribers from the records seized pursuant to the search warrants.  Listed on the customer database was Daniel Kamen, 99 Burlington St, Lexington, Massachusetts 02420.  The database showed that on March 11, 2003, Daniel Kamen purchased Internet access to sites known to contain child pornography, using the credit card number 5176 6900 0252 5660 for the purchase.

<u>FACTS OF THE INVESTIGATION</u>

14.  Based on the information in the previous paragraph, on August 6, 2004, Daniel Kamen, 92 Burlington St., Lexington, Massachusetts 02420 was mailed a solicitation from an undercover Postal Inspection Service operation located in Clear Spring, Maryland, 21722.  The undercover operation is managed by Postal Inspector Tom Kochman of Harrisburg, Pennsylvania.  The undercover operation is designed to offer those individuals who are

interested in seeing children being sexually exploited the opportunity to purchase videotapes containing such material. The advertisement/solicitation is in the form of a one page flyer.  The solicitation read as follows:

**YBCVIDS**
**P.O. BOX 176**
**CLEAR SPRINGS, MD 21722**

I want to invite you to become a customer of one of the newest, best stocked companies when it comes to finding all of your video interests.  I know from my own experience how difficult it is to find the types of videos that you want without being embarrassed to ask for it, only to find out that they don't carry that type of material.  I know what it is like to surf the web and always be afraid of giving out your credit card number and when you finally do, what you get isn't what was advertised. I guarantee satisfaction or your money will be returned and you can keep the tapes.

I have taken the steps to find all the right kind of videos that can't be found in any video store and if you do find them on the web, you can't be sure of what you will get. I feature everything that you can imagine on my videos and I specialize in the taboo, hard to find, forbidden material that people are looking for.

I invite you to look over the brochure and take the time to complete the short information sheet to request my special listing of videos. Once I receive your request the video listing will be sent to you promptly as will all order. At this time I can only offer video tapes but will be offering DVD's in the near future.
-----------------------------------------------------
NAME_____     Animals () Bondage () Enemas ()
ADDRESS_____     Pissing () Shitting () Greek ()
CITY_____     B&D      ()   S&M () Pedophilia ()
                               Preteen-Boys () Girls () Incest()

SIGNATURE*_____Young Teen-Boys() Girls() Incest()
Masturbation () Piercing () Rubber () Lesbians () Anal ()
Rape () Diapers () TV () Spanking () Gay Males ()

008

6

Special Requests ()_____

*By my signature above I certify that I am over 18 years
of age and request that the video listings sent to me. I
am not a law enforcement office or private citizen working
for such an agency.

15.   On September 14, 2004, Inspector Kochman received
an envelope in the mail that contained a reply to the
solicitation from Kamen.  The envelope was addressed to
YBCVIDS, P.O. Box 176, Clear Spring, MD 21722.  The envelope
was postmarked in Middlesex-Essex, MA on September 9, 2004.
Inside the envelope was the one page flyer that the
undercover operation had mailed to Kamen.  Handwritten on
the flyer was the name and address of Daniel Kamen, 82 Brick
Kiln Rd., Apartment 10-104, Chelmsford, MA 01824, with a
signature below the name.  In addition, Kamen requested more
information concerning videotapes with, "Preteen-Boys" and
"Young Teen-Boys."

16.   On September 21, 2004, Inspector Kochman mailed
an order form and two pages listing the videotapes available
for sale to Dan Kamen, 82 Brick Kiln Rd, Apt. 10-104,
Chelmsford, MA 01824.  On the envelope, Kochman listed the
return address of YBC, P.O. Box 176, Clear Spring, MD 21722.

17.   On September 30, 2004, Kochman received an envelope
addressed to YBCVIDS, P.O. Box 176, Clear Spring, MD 21722
USA, with a return address of Daniel Kamen, Apt. 10-104, 82

**009**

Brick Kiln Rd, Chelmsford, MA 01824, USA.  The envelope was

postmarked in Middlesex-Essex, MA 018 on September 27, 2004.

Inside the envelope was an order form and $65.00 in cash.

Written on the order form was a request for the videotapes

called "Kissing Cousins," "Boys will be Boys," and "Boys and

Girls."

18.  The listing for the videotapes on the list that the

undercover operation mailed to Kamen read as follows:

**Kissing Cousins-** The second tape has 2 blonde boys who are
cousins that are about 11-13 years old, they get in bed
together and get naked.  They start out with a lot of
kissing, and then start jacking off.  After a while they
suck each others dicks and finger fucking their asses.
They are both really cute and the action is hot.

**Boys will be Boys-** This is another amateur tape with boys
from 8 to 16 years old.  This tape shows a lot of boys
naked outside standing around pissing.  The boys
eventually jack off.  The other boys are in the house and
there is a lot of jacking off and dick sucking.  As their
punishment, Dad spanks them and makes them suck his dick.
The boys also use a little dildo on Dad's ass.

**Boys and Girls-** This tape is one with two boys who are
Jr. High Football players and the two young cheerleaders,
all about 12 years old. They skip school and go to the one
girl's house.  They all get naked and the cheerleaders
suck the boys dicks and then the boys fuck the girls, an
Ok tape and fun to watch if you don't mind the girls.

### Additional Investigation

19.  I ran an Autotrack check on any individuals living

at 99 Burlington St in Lexington, Massachusetts.  Auto track

is an on-line information source that can identify, locate

and profile individuals.  Auto track has cross-links to over

**010**

four billion records. Auto track listed Helene Kamen as residing at that 99 Burlington St, Lexington, Massachusetts.

20. On November 10, 2004, I conducted a check with the Massachusetts Registry of Motor Vehicle for Registered Vehicles to Daniel Kamen. The Registry revealed that a motor vehicle bearing Massachusetts registration 13AN14 a 2003 Mitsubishi Eclipse as registered to Daniel Kamen, 99 Burlington St, Massachusetts 02420.

21. On November 23, 2004, I spoke with Carrier Supervisor Ann Farley in Chelmsford, Massachusetts. Carrier Supervisor Farley confirmed to me that Daniel Kamen received mail delivery at 82 Brick Kiln Rd, Building 10 Apartment 104, Chelmsford, Massachusetts.

22. On November 2, 2004, I spoke with Rental Manager Kate McDermott at The Meadows Condominium Complex located 82 Brick Kiln Road, Chelmsford, Massachusetts. Kate McDermott provided a copy of the Lease Agreement for the occupant of 82 Brick Kiln Rd, Building 10 Apartment 104, Chelmsford, Massachusetts. The Lease Agreement identified Daniel Kamen as the occupant signing a Lease in November 2003. The parking registration form identified a Massachusetts registration number of 13AN14 as a 2003 Mitsubishi Eclipse. The Lease provided a name and number to call in case of an emergency. The name given was Helene Kamen with a telephone

011

number of (781) 861-1653.  This name and number match the occupant of Helene Kamen located at 99 Burlington St, Lexington, Massachusetts, 02420.

23.  Within ten days of issuance of a search warrant, I will oversee the controlled delivery of a padded mailing bag with $ 4.44 in postage, addressed to Daniel Kamen, 82 Brick Kiln Rd, Building 10 Apt. 104, Chelmsford, MA 01824 with a return address of YBCVIDS, P.O. Box 176, Clear Springs, MD 21722.  The mailing bag will contain three videotapes labeled "Kissing Cousins," "Boys will be Boys," and "Boys and Girls."

24.  I have reviewed the videotape labeled "Kissing Cousins" that will be delivered to Kamen.  Based on my training and experience, it depicts minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, and Section 2256.  Specifically, it depicts two minors (two boys) engaged in sexually explicit conduct, including intercourse and masturbation.  I will make still images available to the Court for its review at the time I seek issuance of this warrant.

25.  I have reviewed the videotape labeled "Boys will be Boys" that will be delivered to Kamen.  Based on my training and experience, it depicts minors engaged in sexually explicit conduct, as defined in Title 18, United States

**012**

Code, and Section 2256.  Specifically, it depicts two minor males in engaged in sexually explicit conduct, including intercourse and oral sex.  I will make still images tape available to the Court for its review at the time I seek issuance of this warrant.

26.  I have reviewed the videotape labeled "Boys and Girls" that will be delivered to Kamen.  Based on my training and experience, it depicts minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, and Section 2256.  Specifically, it depicts a three minor males in engaged in sexually explicit conduct, including oral sex, and masturbation.  I will make still images available to the Court for its review at the time I seek issuance of this warrant.

**013**

**CONCLUSION**

27.   Based on the foregoing, I have probable cause to believe that there currently is, and after delivery of the above described videotapes will be, evidence of violations of Title 18, United States Code, Section 2252(a)(2)and (a)(4)(B) (receipt and possession of child pornography) located at the residence of Daniel Kamen, 82 Brick Kiln Rd, Building 10 Apartment 104, Chelmsford, Massachusetts, 01824.


_____
Scott W. Kelley
United States Postal Inspector


Sworn and subscribed before me this 1st day of December, 2004.


_____
Lawrence P. Cohen
United States Magistrate Judge


014

# UNITED STATES DISTRICT COURT

DISTRICT OF Massachusetts

### In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

The residence of Daniel Kamen, located at 82 Brick Kiln Road, Building 10, Apartment 104, Chelmsford, Massachusetts

## SEARCH WARRANT

CASE NUMBER: 04-M00082-LPC

## EXHIBIT FOUR

TO:    U.S. Postal Inspector Scott W. Kelley    and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ U.S. Postal Inspector Scott W. Kelley _____ who has reason to
                                                                Affiant

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

The residence of Daniel Kamen, located at 82 Brick Kiln Road, Building 10, Apartment 104, Chelmsford, Massachusetts

in the _____ District of _____ Massachusetts _____ there is now

concealed a certain person or property, namely (describe the person or property)

See Schdule A attached hereto

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _____ 12-11-2004 _____
                                                                              Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to _____ The Honorable Lawrence P. Cohen _____

as required by law.    U.S. Judge or Magistrate Judge

December 1, 2004.    1:55 pm    at    Boston, Massachusetts
Date and Time Issued                              City and State

Lawrence P. Cohen
U.S. Magistrate Judge
Name and Title of Judicial Officer    Signature of Judicial Officer

016

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 12/1/04 | 12/6/04 5:07 pm | |

INVENTORY MADE IN THE PRESENCE OF

DANIEL KAMEN

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

SEE ATTACHED

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

12/20/04

Subscribed, sworn to, and returned before me this date.

017

U.S. Judge or Magistrate Judge

12/20/04

Date

<u>Schedule A</u>

1.    Records, documents, correspondence, notes, and/or any other materials relating to contact via mail, courier, and/or computer by Daniel Kamen with <u>YBCVIDS@yahoo.com</u> and/or YBCVIDS, P.O. Box 176, Clear Spring, MD 21722.

2.    One padded mailing bag addressed to Dan Kamen, 82 Brick Kiln Rd, Building 10, Apartment 104, Chelmsford, MA 01824 with a return address of YBCVIDS, P.O. Box 176, Clear Springs, MD 21722.

3.    Three VHS videotape, labeled "Kissing Cousins," "Boys will be Boys," and "Boys and Girls."

4.    Documents relating to the use of credit card number 51766900025660 to purchase Internet access  in March, 2003.

6.    Any and all visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, in any format or media.

8.    Records evidencing occupancy or ownership of the premises to be searched, including, but not limited to, utility and telephone bills, mail envelopes, and/or addressed correspondence.

018



United States Postal Inspection Service
**Restricted Information**

Print Date: 01/05/05
Print Time:  9:04.34

**Case Summary Report**
**Case Number: 0675-1511612-CE(1)**

Page 2 of 3

Requestor: USPIS\SWKelley

| Date | Activity |
|---|---|

10/21/2004

**EXHIBIT FIVE**

---
Entered By:USPIS\MJBeauregard On:10/21/2004 11:20:57 AM
---

Event: Link Case to Subject
SubjectID(ISN): 2100913
NASID: 6204704
Person Name: Daniel Kamen
Firm Name:

10/21/2004

Approved - Request for Case Jacketing: The Case has been approved for Jacketing and Case Status is change to 'Open Case'. Also Case Resolution is change to 'Unsolved Open'.

12/10/2004

Status Comments: Approved – Open

---
Entered By:USPIS\SWKelley On:12/10/2004 1:13:44 PM
---

Event: Link Case to Subject
SubjectID(ISN): 2122211
NASID: 6407972
Person Name: Helen B Kamen
Firm Name:

12/10/2004

---
Entered By:USPIS\SWKelley On:12/10/2004 1:24:26 PM
---

On December 6, 2004, a controlled delivery of three videotapes containing child pornography was made and a federal search warrant was executed on the residence of Daniel Kamen, 82 Brick Kiln Rd Apt. 10-104, Chelmsford, Massachusetts.  Assisting Postal Inspectors in the delivery and subsequent search was an agent from ICE and detectives from the Chelmsford, MA Police Department.  Kamen was listed as a customer on the "Lola Madness" database.  In March 2003, Kamen paid for access to websites on the internet known to distribute child pornography.  In August 2004, Kamen was mailed a solicitation from an Inspection Service undercover operation and was offered the opportunity to purchase videotapes containing child pornography.  Kamen responded and requested a catalog of what products were for sale. He stated his interest included preteen boys and young teen boys.  A catalog was then mailed to Kamen. An order was received in the mail from Kamen with $65.00 cash enclosed to pay for the videos.

After Kamen picked up the package from the Neighborhood Delivery Collection Box Unit (NCDBU) containing the videotapes, he brought it into his residence.  After waiting five minutes the search warrant was executed.  Kamen was advised of his Miranda Rights prior to any questioning.  He said he was willing to be interviewed and signed a waiver to those rights.  Kamen was provided copies of the correspondence between himself and the undercover.  He was asked to date and initial the correspondence he recognized, which he did.  He admitted to ordering the videos from YCBVIDS.  He stated, "I find young boys attractive." Kamen admitted to viewing child erotica/ pornography sites via the internet.  Kamen stated that he ordered the tapes because "movies make it look more real."  Kamen admitted to looking at images young boys in sexual situations on the internet.  He stated he used the computer at his mothers to gain access to the internet.  Kamen stated that he would look at the images of children being sexual exploited and then delete them.  He did this in an effort to keep his from mother locating the images.

**041**

The search of Kamen's residence uncovered pictures of young girls and boys (not child pornography) that appeared to have been taken at a day care.  Kamen was asked about these pictures at which time he stated" I work at a day care."  Kamen currently works at Next Generation Children's Center in Andover, MA. He stated he worked in a class with 3 to 4 year old girl and boys.  He reported that he does help student with toilet training issues.  He explained that there are 20 children per classroom.  Prior to that Kamen was employed by Knowledge Beginnings in Burlington, MA.  He took care of 3 and 4 year old boys and girls.  He stated that he would change clothes of these children and assist them with toilet training issues.  Kamen also had been employed by Disney Cruise Lines working in the day care and nursery.  He stated his



**Case Summary Report**
**Case Number: 0675-1511612-CE(1)**

Page 3 of 3

Requestor: USPIS\SWKelley

position was to lead 3 to 5 year old boys and girls in activities while on the cruise ship.  He also was employed by  Dromlen Farm Summer Camp and his duties included supervision of 3 to 4 year old boys and girls.
Seized from the residence was a receipt for rent, correspondence from YBCVIDS, the mailing bag containing the (3) videotapes, pictures young boys and girls playing in the classroom and a digital camera containing images of children.  A computer was seized via a consent search from his mother's residence.

Follow-up with the various Day Care Centers is currently on going at the present time.  The Office for Children, the child care licensing authority for the Massachusetts is conducting an official investigation into possible violations of standards of case and sexual abuse.  The Massachusetts Department of Social Services is presently screening the allegation of possible sexual abuse.
Investigation is ongoing at this time.

| | |
|---|---|
| 12/10/2004 | |
| 12/10/2004 | |
| 12/10/2004 | |
| 12/10/2004 | |
| 12/30/2004 | |
| 12/30/2004 | |
| 12/30/2004 | |
| 12/30/2004 | Date First Contact Result Date Changed From:  TO 12/01/04<br>By: USPIS\AMHamilton |
| 12/30/2004 | |
| 12/30/2004 | |
| 12/30/2004 | Case Control Number: 1511612 - Subject ID: 2100913 |
| 12/30/2004 | |
| 01/02/2005 | Case Control Number: 1511612 - Subject ID: 2100913<br>Approved By: USPIS\MEBickett On: 1/2/2005 6:43:53 PM |
| 01/05/2005 | |

---
Entered By:USPIS\SWKelley On:1/5/2005 9:04:25 AM
---

On December 22, 2004, a federal grand jury in the  District of Massachusetts, returned an indictment charging Daniel Kamen with one count of Receipt Child Pornography, 18 USC 2252(a)(2), and one count of Possession of Child Pornography, 18 USC 2252(a)(4)(b).
On December 28, 2004, Daniel Kamen of 99 Burlington Street, Lexington, MA was arrested by Postal Inspectors for violation of Title 18 USC 2252A(a)(2) and 2252A(a)(2)(A), Possession and Receipt of Child Pornography.  On December 28, 2004, Kamen was transported to the U.S. District Court of Massachusetts where he received his initial appearance and detention hearing before Magistrate Judge Lawrence P. Cohen.  Kamen was remanded to the custody of the United States Marshal Service.

**Narrative Reports**

| Date | Type | Document Name | Subject(s) |
|---|---|---|---|
| | | | |

---

| | |
|---|---|
| Inspector's Name Signature/Date | Reviewer's Name & Signature/Date |

042

## EXHIBIT SIX

### Memorandum of Interview

| | | |
|---|---|---|
| CASE NO. | : | 0675-1511612-CE (1) |
| NAME OF PERON INTERVIEWED | : | Daniel Kamen |
| DATE OF INTERVIEW | : | December 6, 2004 |
| PLACE OF INTERVIEW | : | Club House |
| ADDRESS OF PERSON INTERVIEWED | : | 82 Brick Kiln Rd Apt. 10-104, Chelmsford, MA |
| INTERVIEW BY | : | Scott W. Kelley, Postal Inspector and Detective Craig Walsh, Chelmsford, MA Police Department |

On December 6, 2004, Daniel Kamen was interviewed by Detective Craig Walsh of the Chelmsford Police Department and Scott Kelley, Postal Inspector. Kamen ordered three (3) videotapes containing child pornography from the Boston Division undercover operation (u/c) called YBCVIDS. A controlled delivery of the videotape was made and subsequently a federal search warrant was executed.

Inspector Kelley knocked and announced our presence at which time Kamen was provided with the search warrant and items to be seized. Prior to being asked any questions, Kamen was provided his Miranda rights. He stated he wanted to cooperate with us and signed the waiver to those rights agreeing to be interviewed. Kamen was informed he was not under arrest and was free to stop the questioning at any time. Kamen was provided the federal definition defined in Title 18 Section 2256.

Kamen was questioned about the package that was just delivered. Kamen stated that its "boys and girls 13 or 14 years old". Kamen stated that he likes "mostly boys." Kamen stated he was waiting for the videos from YBCVIDS. He stated he expected to see real children involved in sexual situations. Kamen stated he never looked at child pornography before being caught this time. Kamen was shown his name and account number from March 2003 when he purchased internet access to a known child pornography site, he admitted the purchase. He admitted that he looked at images of child pornography from this site. He stated that this computer was at his mother's residence. He stated that he does not have any images of children being sexual exploited on that computer. He stated that "I look at pictures and then I delete them." He stated he deleted them, "so my mother does not find them." Kamen explained that he looked at approximately 10 child pornography/erotica sites. Kamen reported that he looks at the following sites:

034

Boyslux.com and Boymaster.com. He admitted that he still uses his mother's computer to look at images of "young boys nude." The last time was on December 3, 2004. Kamen stated he sometimes prints the images of children being sexually exploited but, then destroys them. He explained that he has downloaded images of children in sexual situations but was not able to open the files. Kamen stated that he is able to get images of boys in sexual situations from Yahoo Groups. He stated these groups have images of "legs spread open with nude 13 year old boys." Kamen stated "he enjoyed looking at the images." Kamen reported that he does not like men his own age, younger boys interest him "I find them attractive."

Kamen stated he started looking at young boys about 2 years ago. He stated that he does not use the images for sexual self gratification. He explained that he is not able to gratify himself due to a medical condition.

Kamen admitted to ordering the videotapes from YBCVIDS. He said he did so because he wanted to see "young teens in sexual positions". Kamen was provided copies of correspondence between YBCVIDS and himself. He was asked to review the correspondence and to date and initial the ones he recognized. He reviewed all the correspondence and initialed and dated them. Kamen stated that he knew the videos from YBCVIDS were illegal.

Kamen admitted that he already viewed one of the three tapes delivered. He stated the E-Mac computer located at his mother's residence in Lexington, MA was the computer he used to connect to the internet and view the images of children. He stated there are no any images of children being sexually exploited in his residence. He stated he has one email addresse of _silkkfl99@usa.com_.

Kamen was questioned about some pictures located during the search of his residence that seem to have been taken at a day care or school. Kamen stated that he worked at Next Generations Day Care in Andover, MA since about March 2004. He stated that his position was a co-teacher in a classroom. He stated that there are 20 pre-school students from 3 to 4 years old. Kamen reported that he was sometimes left alone with these children. He explained that he has assisted children with toilet training issues. He has also changed diapers on boys and girls.

Kamen stated that he worked at Knowledge Beginnings in Burlington, MA from May 2000-March 2002. He stated he worked with 2 to 3 year old boys and girls. He would assist with training pants and changed diapers. He stated his reason for leaving was that it was too stressful.

Kamen stated he was not attracted to these children, "I like more around puberty age."

Kamen worked on Disney Cruise Lines from June 2002 to November 2002. He stated he worked in the Day Care. The children would range from 3 to 5 years old. He stated that he worked on the 7 day cruise for about 16-20 sailings departing from Fort Lauderdale, Florida. He explained his responsibilities included helping with

potty training. During this same period he worked in the nursery for Disney Cruise Lines working with children from infant to 3 years. He would read to them and change them as needed.

Kamen worked at the Dromlen Farm Summer Camp in Lincoln, MA from 1994 to 1998. He worked with children ages 3 to 4 years. He would explain and show the children the various animals on the farm. He explained this camp to be a day camp. He would often assist children with bathroom issues.

Kamen stated that he recently had surgery for erectile dysfunction. He explained that this was the second surgery for the same condition. He stated that Dr. Goldstein in Boston performed the surgery. Kamen stated he was instructed by the doctor to try stimulating himself. Kamen stated "I ordered the tapes."

Kamen provide written consent to seize his digital camera and the pictures of children from the day care. He has never touched a minor or had a minor touch him inappropriately. He is willing to take a polygraph to the above statement. Kamen provided personal history.

Kamen was given an original of the search warrant and a list of items to be seized along with a search warrant inventory.


_____
Scott W. Kelley
United States Postal Inspector

_12-13-04_____
Date

036