UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 04-10384-PBS |
| v. | ) | |
| | ) | |
| DANIEL KAMEN, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE[1]**

The United States of America, by and through its attorneys, United States Attorney

Michael J. Sullivan and Assistant United States Attorney Paul R. Moore, hereby files this

Memorandum of Law in Response to Defendant's Motion to Suppress Evidence.

**I.      Background Information**

On December 1, 2004, U.S. Postal Inspector Scott W. Kelley provided an application and

affidavit for a search warrant to Magistrate Judge Lawrence P. Cohen.  Inspector Kelley's

application and affidavit contained information that established both (1) that the residence of the

Defendant, Daniel Kamen, at the time the search warrant was issued, likely contained property

that constituted evidence of the commission of a crime(s) and (2) that following the controlled

delivery of videotapes containing child pornography by Inspector Kelley, which was to occur

within the ten-day time-period specified by the search warrant, there would likely be further

evidence of the commission of a crime(s).

Based on the information presented in the affidavit, Magistrate Judge Cohen issued a

search warrant on December 1, 2004.  On December 6, 2004, following controlled delivery of

the videotapes containing child pornography, Inspector Kelley executed the search warrant

---

[1]Please find "Attachment A," United States Postal Inspector's "affidavit."

correctly and seized the evidence specified by the search warrant from the residence of the Defendant.

Though the United States contests the Defendant's characterization of some of the facts underlying this case, the essential facts are largely not in dispute. For the purpose of simplicity, the government will refer to the same materials as the Defendant (which materials were the government's search-related documents submitted to the Magistrate Judge in this matter).

## II.    The Search Warrant Was Validly Granted And Executed as an Ordinary Search Warrant

For a valid search warrant to issue, the application and supporting affidavit presented to the court must contain sufficient information to "demonstrate probable cause to believe that (1) a particular person has committed a crime . . . and (2) enumerated evidence of the offense will be found at the place to be searched . . .". *United States v. Beckett*, 321 F.3d 26, 31 (1st Cir. 2003). To establish probable cause, the affidavit must simply contain information showing a "fair probability" that contraband or evidence of a crime will be found at the place to be searched at the time of the search. *See United States v. Grubbs*, 546 U.S. __, 2006 U.S. Lexis 2496, *10 (Mar. 21, 2006); *United States v. Grant*, 218 F.3d 72, 74 (1st Cir. 2000). Whether the government agent has met his or her burden of showing this "fair probability" is based on the "totality of the circumstances" presented by the affidavit. *See United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997).

Inspector Kelley's affidavit met both of the criteria set out in *Beckett*. First, the affidavit provided enough information for Magistrate Cohen to conclude that the Defendant had committed crimes. *See Beckett*, 321 F.3d at 31. The affidavit described an ongoing investigation by the Postal Inspectors' New Jersey/Caribbean Division, which discovered that a

credit card registered to the Defendant and to the Defendant's address had been used to purchase "Internet access to sites known to contain child pornography." *Affidavit of Inspector Kelley*, Dec. 1, 2004, at pages 4-5. Further, the affidavit detailed a government sting operation that resulted in the Defendant ordering several tapes explicitly described to the Defendant as containing child pornography. *Id.*, at pages 5-8. Finally, the affidavit set out the plans of Inspector Kelley to participate in a controlled delivery of the tapes containing child pornography to the Defendant. *Id.* at page 10. These facts demonstrated at least a "fair probability" that the Defendant had engaged in multiple criminal acts, including receipt of child pornography over the Internet, possession of visual depictions of minors engaged in sexually explicit conduct, and attempt to procure child pornography through the mail.

Importantly, the affidavit provided sufficient information for Magistrate Cohen to conclude that enumerated evidence of the Defendant's crimes would be found at the Defendant's residence. *See Beckett*, 321 F.3d at 31. Schedule A, attached to Inspector Kelley's application for a search warrant, listed six items that he expected to find and seize at the Defendant's residence upon execution of the search warrant. Inspector Kelley's affidavit was abundantly clear that the tapes containing child pornography and the padded mail bag in which they were sent would only be present *after* the controlled delivery. *See Affidavit of Inspector Kelley*,

Dec.1, 2004, at page 10.  It was also clear, however, that the presence of items #1,[11] #4,[2] #6,[3] and

#8[4] of Schedule A in the Defendant's residence was independent of the controlled delivery of the

tapes containing child pornography which the Defendant had ordered.  The credit card used to

procure Internet access to sites containing child pornography was expressly listed as originating

from the Defendant's address.  *Id.* at page 5.  Likewise, the correspondence between the

Defendant and YBCVIDS culminating in the order of child pornography clearly listed the

Defendant's residence as its return address, and mail sent to that same address was answered by

the Defendant.  *Id.* at page 7-8.  *Each of these items would be evidence relevant to the*

*Defendant's criminal activity*.

     Further, there is a very strong nexus between this evidence and the Defendant's address.[5]

In "totality," Inspector Kelley's affidavit undoubtedly provided sufficient information for

Magistrate Judge Cohen to have found probable cause for a search any time within the ten days

---

[11] "Records, documents, correspondence, notes, and/or any other materials relating to contact via mail, courier, and/or computer by Daniel Kamen with YBCVIDS@yahoo.com and/or YBCVIDS, P.O. Box 176, Clear Spring, MD 21722."

[2] "Documents relating tot he use of credit card number 51766900025660 to purchase Internet access in March, 2003."

[3] "Any and all visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, in any format or media."

[4] "Records evidencing occupancy or ownership of the premises to be searched, including, but not limited to, utility and telephone bills, mail envelopes, and/or addressed correspondence."

[5] In this, the instant case differs from *United States v. Ricciardelli*, 998 F.2d 8 (1st Cir. 1993).  In that case, the evidence sought by the warrant was delivered not the Defendant's address, the place specified by the warrant to be searched, but to the local post office.  *Id.* at 9-10  Such lack of a nexus between the place to be searched and the evidence to be seized is not at issue in the present case where all the evidence specified by the warrant is clearly linked to the Defendant's residential address.

following issuance of the search warrant.  The decision on the part of Inspector Kelley to wait to

perform the search until after the controlled delivery of the tapes containing child pornography

does not affect this finding.

As Magistrate Judge Cohen's finding of probable cause had very sound basis in Inspector

Kelley's affidavit, it should be awarded "great deference."  *See United States v. Grant*, 218 F.3d

72, 74 (1ˢᵗ Cir. 2000).  In general, "[a] reviewing court must give 'great deference' to a

magistrate's assessment of the facts and inferences supporting the affidavit. . . 'reversing only if

there is no "substantial basis for. . . concluding" that probable cause existed.'" *United States v.

Sawyer*, 144 F.3d 191, 193 (1ˢᵗ Cir. 1998), citing *United States v. Procopio*, 88 F.3d 21, 26 (1ˢᵗ

Cir. 1996).  The factual accuracy of Inspector Kelley's affidavit has not been disputed.[6]  Nor has

any allegation been made that Magistrate Judge Cohen was acting as a "rubber stamp."  *See

United States v. Leon*, 468 U.S. 897, 914 (1984).  Magistrate Judge Cohen reviewed Inspector

Kelley's honest affidavit, and determined that it provided a basis for the warrant.  His decision to

grant a search warrant should therefore be accorded great deference.

Finally, the warrant issued by Magistrate Judge Cohen met all Constitutional

requirements as did the search executed pursuant to the warrant.  Pursuant to the plain terms of

the Fourth Amendment, a warrant must specify "the place to be searched" and the "the persons

or things to be seized."  There are no other Constitutional requirements.  *See Grubbs*, 546 U.S.

__, 2006 U.S. Lexis 2496, *15 (Mar. 21, 2006).  Likewise, the Fourth Amendment does not

require that the warrant "be exhibited at the outset of the search, or indeed until the search has

ended."  *Id.* at *17-*18 (citations omitted).  In this case, the search warrant issued by Magistrate

---

[6] Again, the instant case differs from *United States v. Ricciardelli*, 998 F.2d 8 (1st Cir. 1993).  In that case, the Postal Inspector admitted that the affidavit he filed to obtain a search warrant omitted discussion of possible contingencies that the Inspector had considered and simply failed to include.  *Id.* at 17.  No such allegation is made, or indeed could be made, in the present case.

Judge Cohen clearly specified the place to be searched as the Defendant's address.  Attached to and incorporated into the search warrant, Schedule A particularly described the items to be seized.  The Defendant concedes that Inspector Kelley, in executing this search warrant, presented the warrant along with Schedule A to the Defendant during the search of the Defendant's residence.  *See Memorandum of Law in Support of Motion to Suppress*, Mar. 17, 2006, at page 5; *see also Memorandum of Interview*, Dec. 6, 2004, at page 1.  Therefore, all the Constitutional requirements for valid issuance and execution of a search warrant were met.

**III.    The Search Warrant Was Validly Granted and was, in effect, Executed as an Anticipatory Search Warrant**

While the search warrant issued by Magistrate Judge Cohen was valid as an ordinary search warrant as laid out above, limited elements of the warrant *might* also arguably be characterized as anticipatory in nature.  Indeed, "[a]nticipatory warrants are . . . no different in principle from ordinary warrants."  *Grubbs,* 541 U.S. __, 2006 U.S. Lexis 2496, *12-*13 (March 21, 2006).  It is common practice to characterize some aspects of the affidavit and warrant in this case as anticipatory.  Even characterized as anticipatory, however, the warrant and the search executed pursuant to the warrant remain valid.

For an anticipatory warrant "to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied.  It must be true … that *if* the triggering condition occurs there is a fair probability that contraband or evidence of a crime will be found in a particular place… [and] that there is probable cause to believe that the triggering condition *will occur*."  *Id.* at *13-*14.  In this case, Inspector Kelley's affidavit sets out that "after delivery of the . . . described videotapes [containing child pornography], evidence of violations of Title 18, United States Code, Section 2252(a)(2) and (a)(4)(B)" will be present at

the Defendant's residence. *Affidavit of Inspector Kelley*, Dec. 1, 2004, at page 12. The affidavit

also describes the specific process by which Inspector Kelley will "oversee the controlled

delivery of a padded mail bag . . . [containing] three videotapes labeled 'Kissing Cousins,' 'Boys

will be Boys,' and 'Boys and Girls'" to the Defendant's address. *Id.* at page 10. These elements

of the affidavit combine into a clear commonsense triggering condition: the controlled delivery

of the tapes. *See United States v. Gendron*, 18 F.3d 955, 966 (1st Cir. 1994) (stating that

warrants and their supporting documents should be read in a commonsense fashion). It is akin to

a tautology that upon the triggering condition of the tapes' delivery to the Defendant's address,

there will be a fair probability that contraband (the tapes containing child pornography) will be

found at the place to be searched (the Defendant's address).[7] Also, as Inspector Kelley is

personally responsible for the triggering condition, the "controlled delivery," there is probable

cause to believe that the triggering condition will occur. Thus, both requirements of *Grubbs* are

met and the search warrant issued by Magistrate Judge Cohen is also, in part, valid as an

anticipatory search warrant.

    The Defendant argues that for the search warrant to be a valid anticipatory search

warrant, it must be labeled as such with the triggering condition clearly specified. *See

Memorandum of Law in Support of Motion to Suppress*, Mar. 17, 2006, at pages 9-12. This is

simply not accurate.[8] In fact, "[b]ecause the probable-cause requirement looks to whether

evidence will be found *when the search is conducted*, all warrants are, in a sense, 'anticipatory.'"

*Grubbs*, 541 U.S. __, 2006 U.S. Lexis 2496, *10 (Mar. 21, 2006). To require that certain

warrants that are more anticipatory than others be specially labeled goes beyond the

---

[7] *See supra* note 6 for an explanation of how the clear nexus

[8] To be fair, the Defendant's *Memorandum* was filed prior to the issuance of the Supreme Court's opinion
in *United States v. Grubbs*, 541 U.S. __, 2006 U.S. Lexis 2496 (Mar. 21, 2006).

requirements of the Fourth Amendment. *See id.* at *15. Assuming that there is probable cause for an "anticipatory" warrant, as there was in this case, the warrant itself must only particularly describe the "places to be searched" and the "the persons or things to be seized" like all warrants. *Id*. The search warrant issued by Magistrate Judge Cohen does both: the warrant itself indicates that the Defendant's address is the place to be searched and Schedule A, attached to and incorporated explicitly into the warrant, specifies the items to be seized.

Finally, the "anticipatory" elements of the search warrant were exercised validly in this case. As set out in the affidavit, Inspector Kelley oversaw delivery of the tapes directly to the Defendant's residence. *Memorandum of Interview*, Dec. 13, 2004, at page 1. Upon completion of the controlled delivery, i.e. the triggering condition, Inspector Kelley executed the search warrant. *Id.* During the search of the Defendant's residence, the Inspector presented a copy of the search warrant and Schedule A to the Defendant. *Id.* This series of events mirrors almost exactly those that occurred in *Grubbs*. *See Grubbs*, 541 U.S. __, 2006 U.S. Lexis 2496, at *6-*8 (Mar. 21, 2006). In both cases, the execution of the warrant was entirely constitutional.

**IV.    Conclusion**

For the reasons stated above, the search warrant and the search carried out pursuant to the warrant were valid, and the Defendant's Motion to Suppress Evidence should be denied in its entirety.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Paul R. Moore
Paul R. Moore
Assistant U.S. Attorney


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 30, 2006.

/s/ Paul R. Moore
Paul R. Moore
Assistant U.S. Attorney

March 30, 2006



### AFFIDAVIT

I, Scott W. Kelley, being duly sworn, depose and state the following:

1.    I am a Postal Inspector of the United States Postal Inspection Service, having been appointed to this position in September 2003. I am assigned to the Boston Division and responsible for the investigation of various postal crimes, including violations of Title 18, United States Code, and Section 2251-2252A, which pertain to the sexual exploitation of children. Prior to my appointment as a United States Postal Inspector, I was a sworn Police Officer in Brockton, Massachusetts, and investigated child pornography cases and various sexual related offenses for 3 years. I have received training in the investigation of those cases by attending numerous seminars and courses.

2.    I have reviewed the case files regarding this investigation. All of the facts reported in this affidavit are of my personal knowledge unless otherwise stated.

3.    I submit this affidavit in anticipation and support of an application for a search warrant. I have not included each and every fact known to me regarding this investigation, but rather have included only those facts necessary to establish probable cause for obtaining the search warrant.

4.    The premises for which I seek a search warrant is the residence of Daniel Kamen, 82 Brick Kiln Road, Building 10, Apartment 104 in Chelmsford, Massachusetts. The     **003**

1

residence is described as multi-family condominium. The
condominium complex is named "The Meadows."  Building number
"10" is clearly posted in blue letters on a sign stating
"Dukes" directly in front of the residence.  The building is
a three-story dwelling with grey vinyl siding.  The front of
the building contains a glass door with the number "10" in
gold letters.  Apartment 104 is located on the ground floor
of the building.  The door is green in color with the number
"104" defined in black letters.  There are two gold locks
located to the left side of the door.

### Relevant Statutes

5.    Title 18, United States Code, Section 2252, makes
it illegal for any person to knowingly transport, ship,
receive, distribute, reproduce for distribution, sell,
possess with intent to sell, or possess visual depictions
that affect interstate commerce, if: (1) the production of
such visual depiction involves the use of a minor engaged in
sexually explicit conduct; and (2) such visual depictions is
of such conduct.

6.    Title 18, United States Code, Section 2256 provides
the definitions for the section 2252.  A "minor" is any
person under the age of 18 years old.  "Sexually explicit
conduct" includes actual or simulated sexual intercourse
(including genital-genital, oral-genital, anal-genital, or
oral-anal), bestiality, masturbation, sadistic or
masochistic abuse, or lascivious exhibition of the genitals
or pubic area of any person.  "Producing" means producing, **004**

2

directing, manufacturing, issuing, publishing or
advertising.  A "visual depiction" includes undeveloped film
and videotape, and data stored on a computer, computer disk
or by any electronic means which is capable of conversion
into a visual image.

7.    In this affidavit, I will refer to any individual
under the age of eighteen as a child or minor, and any
visual depictions of a child or minor engaging in sexually
explicit conduct as defined in Title 18, United States Code,
Section 2256 as child pornography.

### Background

8.    Based on my training and experience, I know that
collectors of child pornography maintain and possess their
materials, including films, videotapes, and electronic
storage media, correspondence, and source information within
a private and secure location, such as their residence.
They typically retain their materials and related
information for many years.  They often seek to correspond
with other collectors to share information and trade
material in an effort to increase or enhance their
collection.

9.    My training and experience with similar cases also
indicates that collectors of child pornography rarely
destroy correspondence from other collectors unless they
suspect their activities will be uncovered by law
enforcement authorities or others.  These collectors
sometimes attempt to conceal their correspondences and      **005**

3

records of orders and sources.  They have been known to use
assumed identities and post office boxes addresses in an
attempt to conceal their activities.  This behavior has been
documented by Postal Inspectors and other law enforcement
officials involved in the investigation of child sexual
exploitation cases throughout the country.

  10.  Because this investigation involves violations of
both State and Federal law, assistance has been sought and
will be provided by both the local and State Police assigned
to investigate crimes against children.

**BASIS OF INVESTIGATION**

  11.  Beginning in March 2003, Postal Inspectors from
the New Jersey/Caribbean Division, in response to a request
from the United States Attorney's Office for the District of
New Jersey, partnered with the Bureau of Immigration and
Custom Enforcement (BICE) Agents, and with other law
enforcement agencies.  The task force initiated an
investigation into a global child pornography enterprise.
The investigation resulted in the identification of a
company known as Regpay.  Regpay's principles were located
in Belarus and Latvia.  Regpay used a credit card processor,
Iserve/Connections USA, located in Ft. Lauderdale, Florida,
to process customer credit card transactions for
subscriptions to child pornography web sites.

  12.  In June, 2003, federal search warrants were
executed by the task force on the offices of
Iserve/Connections USA.  Additional search warrants were

**006**

4

served on various computer servers throughout the country
associated with Iserve/Connections USA and Regpay.  As a
result of these searches, a total of 16,000 customer
records/transactions of individuals residing in the United
States have been seized.  BICE agents, in an undercover
capacity, subscribed to the web sites related to the 16,000
records/transactions.  The vast majority of the web sites
featured child pornography.  A few of the web sites
contained child erotica material.

13.  BICE agents, at their Cyber Smuggling Center (C-
3), Fairfax, Virginia, compiled the database of the 37,000
United States subscribers from the records seized pursuant
to the search warrants.  Listed on the customer database was
Daniel Kamen, 99 Burlington St, Lexington, Massachusetts
02420.  The database showed that on March 11, 2003, Daniel
Kamen purchased Internet access to sites known to contain
child pornography, using the credit card number 5176 6900
0252 5660 for the purchase.

### FACTS OF THE INVESTIGATION

14.  Based on the information in the previous
paragraph, on August 6, 2004, Daniel Kamen, 92 Burlington
St., Lexington, Massachusetts 02420 was mailed a
solicitation from an undercover Postal Inspection Service
operation located in Clear Spring, Maryland, 21722.  The
undercover operation is managed by Postal Inspector Tom
Kochman of Harrisburg, Pennsylvania.  The undercover
operation is designed to offer those individuals who are

007

interested in seeing children being sexually exploited the
opportunity to purchase videotapes containing such material.
The advertisement/solicitation is in the form of a one page
flyer.  The solicitation read as follows:

### YBCVIDS
### P.O. BOX 176
### CLEAR SPRINGS, MD 21722

I want to invite you to become a customer of one of the
newest, best stocked companies when it comes to finding
all of your video interests.  I know from my own
experience how difficult it is to find the types of videos
that you want without being embarrassed to ask for it,
only to find out that they don't carry that type of
material.  I know what it is like to surf the web and
always be afraid of giving out your credit card number and
when you finally do, what you get isn't what was
advertised. I guarantee satisfaction or your money will be
returned and you can keep the tapes.

I have taken the steps to find all the right kind of
videos that can't be found in any video store and if you
do find them on the web, you can't be sure of what you
will get. I feature everything that you can imagine on my
videos and I specialize in the taboo, hard to find,
forbidden material that people are looking for.

I invite you to look over the brochure and take the time
to complete the short information sheet to request my
special listing of videos. Once I receive your request the
video listing will be sent to you promptly as will all
order. At this time I can only offer video tapes but will
be offering DVD's in the near future.
------------------------------------------------------------
NAME_____      Animals () Bondage () Enemas ()
ADDRESS_____      Pissing () Shitting () Greek ()
CITY_____      B&D     ()   S&M () Pedophilia ()
                          Preteen-Boys () Girls () Incest()

SIGNATURE*_____      Young Teen-Boys() Girls() Incest()
Masturbation () Piercing () Rubber () Lesbians () Anal ()
Rape () Diapers () TV () Spanking () Gay Males ()

**008**

6

Special Requests ()_____

*By my signature above I certify that I am over 18 years of age and request that the video listings sent to me. I am not a law enforcement office or private citizen working for such an agency.

15.  On September 14, 2004, Inspector Kochman received an envelope in the mail that contained a reply to the solicitation from Kamen.  The envelope was addressed to YBCVIDS, P.O. Box 176, Clear Spring, MD 21722.  The envelope was postmarked in Middlesex-Essex, MA on September 9, 2004. Inside the envelope was the one page flyer that the undercover operation had mailed to Kamen.  Handwritten on the flyer was the name and address of Daniel Kamen, 82 Brick Kiln Rd., Apartment 10-104, Chelmsford, MA 01824, with a signature below the name.  In addition, Kamen requested more information concerning videotapes with, "Preteen-Boys" and "Young Teen-Boys."

16.  On September 21, 2004, Inspector Kochman mailed an order form and two pages listing the videotapes available for sale to Dan Kamen, 82 Brick Kiln Rd, Apt. 10-104, Chelmsford, MA 01824.  On the envelope, Kochman listed the return address of YBC, P.O. Box 176, Clear Spring, MD 21722.

17.  On September 30, 2004, Kochman received an envelope addressed to YBCVIDS, P.O. Box 176, Clear Spring, MD 21722 USA, with a return address of Daniel Kamen, Apt. 10-104, 82

009

Brick Kiln Rd, Chelmsford, MA 01824, USA.  The envelope was

postmarked in Middlesex-Essex, MA 018 on September 27, 2004.

Inside the envelope was an order form and $65.00 in cash.

Written on the order form was a request for the videotapes

called "Kissing Cousins," "Boys will be Boys," and "Boys and

Girls."

18.  The listing for the videotapes on the list that the

undercover operation mailed to Kamen read as follows:

**Kissing Cousins-** The second tape has 2 blonde boys who are
cousins that are about 11-13 years old, they get in bed
together and get naked.  They start out with a lot of
kissing, and then start jacking off.  After a while they
suck each others dicks and finger fucking their asses.
They are both really cute and the action is hot.

**Boys will be Boys-** This is another amateur tape with boys
from 8 to 16 years old.  This tape shows a lot of boys
naked outside standing around pissing.  The boys
eventually jack off.  The other boys are in the house and
there is a lot of jacking off and dick sucking.  As their
punishment, Dad spanks them and makes them suck his dick.
The boys also use a little dildo on Dad's ass.

**Boys and Girls-** This tape is one with two boys who are
Jr. High Football players and the two young cheerleaders,
all about 12 years old. They skip school and go to the one
girl's house.  They all get naked and the cheerleaders
suck the boys dicks and then the boys fuck the girls, an
Ok tape and fun to watch if you don't mind the girls.

### Additional Investigation

19.  I ran an Autotrack check on any individuals living

at 99 Burlington St in Lexington, Massachusetts.  Auto track

is an on-line information source that can identify, locate

and profile individuals.  Auto track has cross-links to over

**010**

8

four billion records.  Auto track listed Helene Kamen as

residing at that 99 Burlington St, Lexington, Massachusetts.

20.   On November 10, 2004, I conducted a check with the

Massachusetts Registry of Motor Vehicle for Registered

Vehicles to Daniel Kamen.  The Registry revealed that a

motor vehicle bearing Massachusetts registration 13AN14 a

2003 Mitsubishi Eclipse as registered to Daniel Kamen, 99

Burlington St, Massachusetts 02420.

21.   On November 23, 2004, I spoke with Carrier

Supervisor Ann Farley in Chelmsford, Massachusetts. Carrier

Supervisor Farley confirmed to me that Daniel Kamen received

mail delivery at 82 Brick Kiln Rd, Building 10 Apartment

104, Chelmsford, Massachusetts.

22.   On November 2, 2004, I spoke with Rental Manager

Kate McDermott at The Meadows Condominium Complex located 82

Brick Kiln Road, Chelmsford, Massachusetts.  Kate McDermott

provided a copy of the Lease Agreement for the occupant of

82 Brick Kiln Rd, Building 10 Apartment 104, Chelmsford,

Massachusetts.  The Lease Agreement identified Daniel Kamen

as the occupant signing a Lease in November 2003.  The

parking registration form identified a Massachusetts

registration number of 13AN14 as a 2003 Mitsubishi Eclipse.

The Lease provided a name and number to call in case of an

emergency.  The name given was Helene Kamen with a telephone

**011**

9

Case 1:04-cr-10384-PBS    Document 37    Filed 03/17/2006    Page 10 of 12

number of (781) 861-1653.  This name and number match the
occupant of Helene Kamen located at 99 Burlington St,
Lexington, Massachusetts, 02420.

23.  Within ten days of issuance of a search warrant, I
will oversee the controlled delivery of a padded mailing bag
with $ 4.44 in postage, addressed to Daniel Kamen, 82 Brick
Kiln Rd, Building 10 Apt. 104, Chelmsford, MA 01824 with a
return address of YBCVIDS, P.O. Box 176, Clear Springs, MD
21722.  The mailing bag will contain three videotapes
labeled "Kissing Cousins," "Boys will be Boys," and "Boys
and Girls."

24.  I have reviewed the videotape labeled "Kissing
Cousins" that will be delivered to Kamen.  Based on my
training and experience, it depicts minors engaged in
sexually explicit conduct, as defined in Title 18, United
States Code, and Section 2256.  Specifically, it depicts two
minors (two boys) engaged in sexually explicit conduct,
including intercourse and masturbation.  I will make still
images available to the Court for its review at the time I
seek issuance of this warrant.

25.  I have reviewed the videotape labeled "Boys will be
Boys" that will be delivered to Kamen.  Based on my training
and experience, it depicts minors engaged in sexually
explicit conduct, as defined in Title 18, United States

**012**

Code, and Section 2256.  Specifically, it depicts two minor males in engaged in sexually explicit conduct, including intercourse and oral sex.  I will make still images tape available to the Court for its review at the time I seek issuance of this warrant.

26.  I have reviewed the videotape labeled "Boys and Girls" that will be delivered to Kamen.  Based on my training and experience, it depicts minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, and Section 2256.  Specifically, it depicts a three minor males in engaged in sexually explicit conduct, including oral sex, and masturbation.  I will make still images available to the Court for its review at the time I seek issuance of this warrant.

**013**

### CONCLUSION

27.   Based on the foregoing, I have probable cause to
believe that there currently is, and after delivery of the
above described videotapes will be, evidence of violations
of Title 18, United States Code, Section 2252(a)(2)and
(a)(4)(B) (receipt and possession of child pornography)
located at the residence of Daniel Kamen, 82 Brick Kiln Rd,
Building 10 Apartment 104, Chelmsford, Massachusetts, 01824.


Scott W. Kelley
United States Postal Inspector

Sworn and subscribed before me this /<sup>st</sup> day of December,
2004.


Lawrence P. Cohen
United States Magistrate Judge

**014**

12