UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04-CR-10384-PBS

UNITED STATES

v.

DANIEL KAMEN

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL**

## INTRODUCTION

Defendant Daniel Kamen has moved, pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure, for a judgment of acquittal or a new trial on his indictment for knowingly receiving child pornography. In support of this motion, the defendant asserts that the government failed to adduce sufficient evidence of his culpable knowledge at the relevant time. The government did not prove that the defendant knew when he received the video tapes in question – before he had viewed them – that they involved actual minors engaged in sexual conduct. Accordingly, this Court should either (a) enter a judgment of acquittal, (b) grant a new trial in the interests of justice, or (c) vacate the receipt conviction and enter a verdict of guilty of the lesser-included offense of possession of child pornography. The grounds for this motion are set forth more fully below.

## SUMMARY OF RELEVANT FACTS.[1]

### I.    OVERVIEW OF THE CASE.

Daniel Kamen was indicted on December 22, 2004, on one count of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2).  Trial commenced before the Honorable Patti B. Saris and a jury on October 30, 2006.  Evidence was presented over the course of two days.  The government submitted two documentary exhibits tending to show that the defendant had ordered and received three videotapes by mail containing depictions of minors engaged in sexual conduct.  The defense was lack of knowledge as to the contents of the videotapes at the time of receipt.  The defendant presented the testimony of three live witnesses relative to the defendant's state of mind.  A motion for a required finding of not guilty was denied.  The jury returned a verdict of guilty on November 2, 2006.  Sentencing was set for February 1, 2007.

The defendant timely filed a motion for judgment of acquittal and motion for new trial, pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure, on November 9, 2006.  The Court allowed him until December 11, 2006 to file a supporting memorandum.

### II.    THE GOVERNMENT'S EVIDENCE.

The government's case was comprised of two documentary exhibits.  The first was a list of seven stipulations of fact signed by the prosecutor, defense counsel, and the defendant, Daniel Kamen.  The second was a sworn statement written and signed in Mr. Kamen's own hand at the behest of a United States Postal Inspector on the date of his arrest, December 6, 2004.  The government did not call any witnesses.

---

[1]    The trial transcript has not yet been prepared.  Counsel relies herein upon docket entries, contemporaneous notes, and memory in recapitulating the course of events.

On the key disputed issue of knowledge, the stipulations contained the following relevant provisions:

> 3.     On September 30, 2004, in response to an undercover United States Postal Inspection Service Operation, the United States Postal Inspection Service received a written request, order and full payment from the Defendant for the following three video cassette tapes: *Kissing Cousins; Boys Will be Boys;* and *Boys and Girls*. ...

> 7.     On December 6, 2004, [after the aforementioned tapes had been received by the defendant and recovered during a search of the defendant's residence], a United States Postal Inspector (Scott Kelley) advised the Defendant of his *Miranda* rights.  The Defendant waived those rights (both orally and in written form) and offered to fully cooperate with investigators in the matter. The Defendant then wrote a statement.  The Defendant also orally admitted that he had ordered the three aforementioned video tapes through the United States mails (*Kissing Cousins; Boys Will be Boys;* and *Boys and Girls*), that he knew that the images depicted minors and that the images he had ordered and received contained and depicted minors engaged in sexually explicit conduct.

The written statement alluded to in the stipulations was the same statement put in evidence at trial.  With respect to the knowledge element, Mr. Kamen's own words in that statement were as follows:

> I ordered videos of teenage boys to be delivered to my apartment ... I ordered them because I was curious about seeing a video of teenage boys.  I felt very dirty watching these and I am remorseful for ordering these.  I am sorry for looking at these and realize that it is wrong and will promise to never look at pictures like this again.

The correspondence between Mr. Kamen and the United States Postal Inspection Service Operation was not put in evidence.

### III.     THE DEFENSE CASE.

Two expert witnesses and Mr. Kamen's mother testified for the defense. The defendant did not testify. The first expert, Dr. Irwin Goldstein, was a world-renowned urologist who had treated Mr. Kamen through the Boston University Center for Sexual Medicine from January 2004 through February 2005. According to Dr. Goldstein, Mr. Kamen had suffered from erectile dysfunction and marked penile curvature since early adolescence. The curvature was so severe that sexual intercourse would have been all but impossible, and, indeed, Mr. Kamen remained a virgin at least until Dr. Goldstein ceased treatment in 2005. A prior surgery to correct the curvature had failed when Mr. Kamen was 16 years old. Dr. Goldstein performed a second surgery in April 2004 and oversaw Mr. Kamen's recovery to ensure that additional operations on the penis would not be required.

Dr. Goldstein testified that proper blood flow through the penis was critical to Mr. Kamen's physical recovery. To that end, he prescribed an indefinite course of a Viagra-like drug which would cause regular erections, and encouraged Mr. Kamen to become sexually active. Dr. Goldstein learned through a series of follow-up visits that Mr. Kamen was not engaging in sexual activity of any kind. He continued to advocate strongly that Mr. Kamen at least masturbate regularly, ultimately counseling that Mr. Kamen try using pornography to stimulate interest. Dr. Goldstein testified that on a number of occasions up to and including the July 23, 2004 and November 5, 2004 post-operative follow-up office visits, he recommended that Mr. Kamen procure pornographic material, and on the latter occasion he had made a written notation of his naming a particular shop in Brookline where Mr. Kamen might do so.

Helene Kamen, Mr. Kamen's mother, who was the third witness to testify, described her

experience being present at several of the post-surgical visits at Dr. Goldstein's office.  According to Mrs. Kamen, Dr. Goldstein appeared incredulous that Mr. Kamen was not sexual in any way, and became increasingly frustrated with Mr. Kamen's failure to follow his admonitions to "use it or lose it."[2]  Mrs. Kamen also spoke to her son's great respect and appreciation for Dr. Goldstein, and to his intense eagerness to please Dr. Goldstein.

The second expert witness, Dr. Carol Ball, was a psychologist engaged in the treatment of people with problem sexual behaviors.  She had treated Mr. Kamen from January 2005 through the date of her testimony.  Dr. Ball testified to Mr. Kamen's neurological disorder, a substrate of the Autistic spectrum best characterized as Asperger Syndrome.  According to Dr. Ball, Mr. Kamen's genetic personality disorder resulted in profound developmental delays, characterized by social immaturity, naivete, deficient awareness of social custom, and insensitivity to nuances in language, among other things.  Dr. Ball likened Mr. Kamen's developmental stage to that of an early adolescent.  She emphasized, however, that notwithstanding Mr. Kamen's retarded social development, the results of a battery of psychological tests showed sexual interest in adult, mature males and females, and no sexual interest in children.

Helene Kamen's testimony described Mr. Kamen's social isolation and delayed development as a child, characteristics which, according to Dr. Ball, corroborated the Asperger's diagnosis.

Defense counsel urged the jury to find that a "perfect storm," involving the naivete resulting from Mr. Kamen's neurological disorder and the desperation to resolve his penile disfigurement, may have clouded Mr. Kamen's understanding of what he would be getting when he ordered three

---

[2]     This phrase was actually used on the stand by Dr. Goldstein to describe his tenor with Mr. Kamen.

videotapes entitled *Kissing Cousins; Boys Will be Boys;* and *Boys and Girls*.

## IV.     THE JURY INSTRUCTIONS.

Judge Saris instructed the jury on the required element of knowledge, and instructed that evidence of the defendant's mental condition could be considered in evaluating whether he acted knowingly.  The court denied the defendant's request for additional instructions on "possession" of child pornography as a lesser-included offense of receipt.  The request was supported by citation to relevant legal authority, and the defendant submitted an additional legal memorandum in support of his request for the lesser-included offense instruction.  The defendant objected to the judge's ruling not to deliver the instruction at the charge conference, and objected again after the jury was instructed without reference to the requested instruction.

## ARGUMENT

## I.     THE GOVERNMENT'S EVIDENCE OF "KNOWING" RECEIPT WAS LEGALLY INSUFFICIENT.

### A.     Summary of Applicable Law.

#### 1.     The knowledge element.

An essential element of the crime of receiving child pornography is knowledge of both the sexually explicit nature of the material received and the age of the subjects involved.  18 U.S.C. § 2252(a)(2); *United States v. X-Citement Video*, 513 U.S. 64, 78 (1994).  The culpable knowledge must be possessed at the moment of receipt in order to establish criminal liability upon receipt. *Compare X-Citement Video*, 513 U.S. at 69 (opining that Congress could not have intended to punish, for example, a retail druggist who returned an uninspected roll of film to a customer, which was later discovered to contain images of children engaged in sexually explicit conduct, for knowing

distribution of child pornography).  "Accordingly, a person who seeks out only adult pornography, but without his knowledge is sent a mix of adult and child pornography, will not have violated [§ 2252(a)(2)]."  *United States v. Myers*, 355 F.3d 1040, 1042 (7th Cir. 2004).

### 2.    Sufficiency of the evidence.

The sufficiency of evidence presented at a criminal trial may be tested after a verdict of guilty has been returned pursuant to motions made under Rules 29(c) and 33 of the Federal Rules of Criminal Procedure.  A Rule 29 motion for judgment of acquittal requires a determination of "whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime."  *United States v. O'Brien*, 14 F.3d 703, 706 (1st Cir. 1994).  Evidence as to guilty knowledge "need not compel a finding of such knowledge in order to sustain a conviction," but there must be sufficient evidence to allow that "reasonable jurors could be convinced beyond a reasonable doubt that the defendants had guilty knowledge."  *United States v. Flaherty*, 668 F.2d 566, 579 (1st Cir. 1981).  The district court's decision to grant or to deny a motion for judgment of acquittal is subject to *de novo* review on appeal.  *United States v. Carucci*, 364 F.3d 339, 343, 348 (1st Cir. 2004).

A district court's discretion to grant a Rule 33 new trial motion is greater than its authority to grant a motion for acquittal.  *United States v. Ruiz*, 105 F.3d 1492, 1501 (1st Cir. 1997).  "Motions for new trial are directed to the discretion of the trial court.  In considering such a motion, the court has broad power to weigh the evidence and assess the credibility of ... the witnesses who testified at trial."  *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir. 1980).  Even where the evidence was sufficient as a matter of law to sustain the conviction, a new trial may be granted if the district court

determines that "the verdict was against the weight of the evidence and would result in a 'miscarriage of justice.'" *United States v. Rothrock*, 806 F.2d 318, 321-22 (1st Cir. 1986). *See also United States v. Wilkerson*, 251 F.3d 273, 278 (1st Cir. 2001) (new trial motion may be granted when "evidence preponderates heavily against the verdict"). The disposition of a motion for new trial will not be disturbed absent an abuse of discretion or error of law. *Ruiz*, 105 F.3d at 1501; *Rothrock*, 806 F.2d at 322. Particularly in a criminal trial, where guilt must have been proved beyond a reasonable doubt, the appellate court is reluctant to reject a district judge's considered assessment that a jury's verdict was "unjust as being contrary to the weight of the evidence." *Rothrock*, 806 F.2d at 322 (emphasizing the "structuring of our criminal justice system to avoid stigmatizing and taking away the liberty of an innocent person").

**B.      Application of Law to Facts.**

      **1.      This Court should enter a judgment of acquittal since no view of the government's evidence could be considered proof beyond a reasonable doubt of the requisite knowledge at the relevant time.**

The totality of the government's evidence as to what Mr. Kamen knew when he received the videos in question – before he had watched them – was as follows:

- Mr. Kamen knew that the titles of the videos were *Kissing Cousins; Boys Will be Boys;* and *Boys and Girls* (*Stipulations* ¶ 3); and

- Mr. Kamen knew that the videos contained images of "teenage boys." (*Sworn Statement*).

Taken in the light most favorable to the government, this evidence shows, at best, possible knowledge of the sexual content of the material. The titles of the videos, particularly *Kissing Cousins* and perhaps *Boys and Girls*, could be suggestive of such. But a mere suggestion that the

defendant could have known that the videos were pornographic cannot sustain a finding of such knowledge beyond a reasonable doubt.  Moreover, any inference that the defendant knew the subjects of the videos were minors would be purely speculative.  18 U.S.C. § 2256(1) defines "minor" as a person under the age of 18.  The evidence was that Mr. Kamen expected to see "boys" who were "teenaged."  An 18 or 19 year old boy would fit this bill and yet not be a minor.  Absent any evidence that the defendant knew the participants were younger than 18 or 19, the government's proof on the knowledge element was fatally deficient.

To be sure, the evidence bespoke a more culpable state of mind at a later time.  According to the Stipulations, Mr. Kamen told Postal Inspector Scott Kelley he knew that the "images depicted minors," and that the minors depicted were "engaged in sexually explicit conduct," but these statements were made after Mr. Kamen had viewed the videos.  *Stipulations* ¶ 7.  Thus, assuming the veracity of these statements, they demonstrated knowing **possession** of child pornography.  The stipulation fails to state that Mr. Kamen had such knowledge when he **received** the videos. This evidence therefore adds nothing to the quantum of proof as to knowing receipt of child pornography.[3]

The totality of the government's evidence of knowledge – viewed in the light most amiable to the verdict, and taking all reasonable inferences in its favor – could not have satisfied a rational factfinder, beyond a reasonable doubt, that the essential element of knowledge was successfully

---

[3]        In fact, the government's evidence as to Mr. Kamen's knowledge after watching the tapes tends to show that he was not aware of the content when he ordered them.  Mr. Kamen said in his written statement that he "felt very dirty" watching the tapes.  *Sworn Statement*.  He said "I am sorry for looking at these and realize that it is wrong and will promise to never look at pictures like this again."  *Sworn Statement*.  It would be fair to infer from Mr. Kamen's stated distaste for child pornography that he would not have ordered that type of material intentionally.  Review of the defendant's motion for a judgment of acquittal need not take account of such an inference, however, since the evidence is to be viewed in the government's favor.

proven.  This Court should enter a judgment of acquittal.

> **2.    This Court should order a new trial in the interests of justice because the verdict was against the weight of the evidence.**

Even if the government's evidence as to the defendant's knowledge could survive a motion for judgment of acquittal, the gross weight of the evidence preponderates so heavily against the verdict as to warrant a new trial.  The conviction in this case rests upon two documentary exhibits.  The government did not present a single witness.  The evidence contained in the incriminating documents consists almost exclusively of the defendant's own admissions.  As discussed above, few of those admissions go to the critical disputed issue of Mr. Kamen's knowledge at the time the videos were received – before he had seen the tapes. That conviction of a federal offense carrying a five-year mandatory minimum prison term, coupled with severe collateral consequences, could stand on so feeble a footing is untenable.

The defendant, for his part, presented three live witnesses to help explain his state of mind at the relevant time.  Of critical import was the testimony of Dr. Carol Ball that Mr. Kamen suffered from a neurological disorder that significantly impaired his processing of information.  She said he was socially immature, naive, insensitive to nuances in language, and lacked awareness of social custom. Assuming that the titles of the videotapes could have betrayed their content to the ordinary reader (and the dubiousness of that proposition is discussed above), Dr. Ball's testimony cast grave doubt on Mr. Kamen's capacity to perceive any such cues.  Further, all three defense witnesses portrayed Mr. Kamen as profoundly sexually inactive and as generally reluctant to procure pornography.  Just as a pattern of unlawful behavior can be evidence of guilty knowledge, this evidence of Mr. Kamen's indisposition undercuts any inference that he was savvy enough to

understand what he was ordering.

There can be no doubt that the weight of evidence favored acquittal. The defendant deserves a new trial.

## II.    THE JURY SHOULD HAVE BEEN INSTRUCTED ON THE LESSER INCLUDED OFFENSE OF KNOWING POSSESSION OF CHILD PORNOGRAPHY.

### A.    Summary of Applicable Law.

The test for whether a defendant's request for a lesser-included-offense instruction should be granted has two prongs. First, the district court must determine whether the proposed instruction in fact defines a lesser-included offense. *Untied States v. Flores*, 968 F.2d 1366, 1369 (1st Cir. 1992). That determination turns on application of the "elements test" defined in *Schmuck v. United States*, 489 U.S. 705, 715-16 (1989). "To pass the test, all the elements of the lesser included offense must be elements of the charged offense – but the charged offense must include at least one additional element." *Flores*, 968 F.2d at 1369. *See also* F. R. Crim. P. 31(c) ("lesser offense" is an offense "necessarily included" in charged offense). The second task for the district court is a determination whether the evidence would permit a rational jury to find the defendant guilty of the lesser offense and acquit him of the greater. *Keeble v. United States*, 412 U.S. 205, 208 (1973); *United States v. Oreto*, 37 F.3d 739, 748 (1st Cir. 1994); *Flores*, 968 F.2d at 1371. For purposes of this determination, the evidence must be viewed "in the light most congenial to the theory," and the instruction should be given whenever the record "can plausibly support it." *Flores*, 968 F.2d at 1369, and cases cited.

Appellate review of the district court's determination is plenary. *Flores*, 968 F.2d at 1369. When both prongs of the above-described test are satisfied, "it is generally reversible error" to refuse

a request for a lesser included offense instruction. *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir. 2000), *citing Keeble*, 412 U.S. at 208. *See also Flores*, 968 F.2d at 1372 ("When, as here, the evidence is sufficient to require that the defendant's theory of the case be submitted to the jury, the court cannot pretermit such consideration either because it would have rejected the theory in a bench trial or because it believed that a discriminating jury would have been likely to follow the same course"). Prior to an appeal, a district court may grant a new trial motion based on its conclusion that a lesser included offense instruction should have been given even where its prior refusal to give the instruction did not amount to legal error. *United States v. Vicaria*, 12 F.3d 195, 198-99 (11th Cir. 1994) (since district court is empowered to grant a new trial "in the interest of justice," court need not conclude that failure to give theory-of-defense instruction was legal error in order to grant new trial).

When the evidence is insufficient to support the greater offense, but sufficient to support a conviction on the lesser-included offense, the trial court has the option of entering a judgment of conviction of the lesser-included offense. *Rutledge v. United States*, 517 U.S. 292, 306 (1996); *United States v. Dhinsa*, 243 F.3d 635, 674 (2nd Cir. 2001). This is so whether or not the jury was instructed on the lesser offense, but in order to avoid prejudice where the theory was not presented at trial, consent of the parties must be obtained before such a judgment may enter. *United States v. Giampino*, 680 F.2d 898, 903 (2nd Cir. 1982); *United States v. Whitaker*, 447 F.2d 314, 322 ((D.C. Cir. 1971).

### B.    Application of Law to Facts.

Since the requested lesser-included-offense instruction was legally cognizable and supported by the evidence in this case, the failure to have instructed the jury on possession of child

pornography requires a new trial.

### 1.    Possession of child pornography is a lesser included offense of receipt.

No federal decision has squarely held that possession of child pornography is necessarily included within the offense of receipt of child pornography, but the "elements test" is clearly satisfied, and pertinent case law lends strong, direct support to the conclusion that possession is a lesser included offense of receipt.

At the time of the offense, the crime of possession of child pornography was defined by 18 U.S.C. § 2252(a)(4).[4]  That section provided:

§ 2252.  Certain activities relating to material involving the sexual exploitation of minors

(a) Any person who –
...
    (4) ...

    (B) knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if –

        (i)    the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

        (ii)   such visual depiction is of such conduct;

    shall be punished as provided in subsection (b) of this section.

The crime of receipt of child pornography was set forth at 18 U.S.C. § 2252(a)(2) as follows:

---

[4]    The version of  18 U.S.C. § 2252 in effect at the time of the offense was effective from April 30, 2003 through July 26, 2006.  Pub. L. 108-21, Title I, § 103(a)(1)(B)-(C), (b)(1)(C)-(D), Title V, § 507, April 30, 2003, 117 Stat. 652, 653, 683.

§ 2252.  Certain activities relating to material involving the sexual exploitation of minors

(a) Any person who –
...

> (2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, ... if –
>
>> (i)    the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>>
>> (ii)   such visual depiction is of such conduct; ...
>
> shall be punished as provided in subsection (b) of this section.

The two statutes are comprised of nearly identical elements.  The only material distinction among the crimes is the use of the term "possession" in one, versus the use of the term "receipt" in the other.

It is widely recognized that "receipt" amounts to "acceptance plus possession." *United States v. Ladd*, 877 F.2d 1083, 1087-88 (1st Cir. 1989) (canvassing firearm and stolen property cases).  *See also, e.g., United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006) (defining receipt of child pornography as the "knowing acceptance or taking of possession" of child pornography); *United States v. Griffin*, 705 F.2d 434, 437 (11th Cir. 1983) (stating that "receipt" of a firearm "means more than simple possession and means 'to get, to take, to acquire, [or] be the recipient of' at a particular time).  Indeed, this was the Supreme Court's construction of the terms in *United States v. Ball*, 470 U.S. 856 (1985), a felon-in-possession case.  The Court explained that "proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon," since "a felon who receives a firearm must also possess it," yet "the converse may not be true.  For example, a felon may possess a firearm without having 'received' it; he may have manufactured the gun himself." *Ball*,

470 U.S. at 862 & n.9. Analyzing the two crimes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (the same conduct may only be made punishable under two criminal provisions if "each provision requires proof of a fact which the other does not"), the *Ball* Court determined that a felon could not be convicted of both receipt and possession of a firearm.

Although the *Ball* Court did not use the phrase "lesser included offense," its explication of the relationship between receipt and possession demonstrates that the "elements test" is satisfied. The *Blockburger* test was not met in *Ball* because all of the elements of possession were subsumed within the offense of receipt of a firearm. Where all the elements of one offense are elements of the charged offense, and where the charged offense includes at least one additional element, the former is a lesser included offense of the latter. *Schmuck*, 489 U.S. at 715-16. Indeed, the Ninth Circuit recently followed *Ball* in holding that charges of receipt and possession of child pornography based on a single act would fail the *Blockburger* test, and that court did describe possession of child pornography as a "lesser included offense" of receipt. *United States v. Kuchinski*, — F.3d —, 2006 WL 3392641, *11-*15 (9th Cir. Nov. 27, 2006). *See also United States v. Morgan*, 435 F.3d 660, 662-63 (6th Cir. 2006) (stating without discussion while recounting the history of the case that defendant's plea to possession of child pornography was a plea to a lesser included offense of the charged violation – receipt of child pornography). Since the elements test is satisfied, possession of child pornography is a lesser included offense of receipt of child pornography.

### 2. The evidence plausibly supported a finding of knowing possession.

As discussed earlier in Argument I, a rational jury could have concluded from the evidence in this case that Mr. Kamen knowingly possessed but did not knowingly receive child pornography. If the defendant discovered the sexually explicit nature of the videos and learned the age of the

subjects only after he had watched the tapes, then he could only be convicted of the lesser offense of possession.  The Seventh Circuit pondered a closely analogous factual situation in *United States v. Myers*, 355 F.3d 1040, 1042 (7th Cir. 2004):

> [A] person who seeks out only adult pornography, but without his knowledge is sent a mix of adult and child pornography, will not have violated [18 U.S.C. §2252(a)(2)]. That same person, however, could be in violation of the possession provision of § 2252 (a)(4)(B) if he or she decides to retain that material, thereby knowingly possessing it.  It is certainly not irrational to punish more severely the person who knowingly receives such material, because it is that person who is creating and/or perpetuating the market for such material.

The jury should have been instructed on this theory of defense.  Accordingly, this Court should order a new trial before a properly instructed jury.  In the alternative, since the jury necessarily found every fact required for conviction of the lesser included offense of knowing possession of child pornography, the verdict of receipt may be set aside and a judgment of conviction of possession may be entered.  *Whitaker*, 447 F.2d 314, 322.

## CONCLUSION

The evidence of knowing receipt of child pornography was so grossly deficient that the conviction on that charge cannot stand.  This Court should enter judgement of acquittal, or, in the alternative, order a new trial on the ground of insufficiency of the evidence.  Alternatively, since the jury necessarily found every fact required for conviction of the lesser included offense of knowing possession of child pornography, the Court should set aside the verdict of receipt of child pornography and enter a judgment of conviction of simple possession.

Respectfully submitted,
**DANIEL KAMEN**
By his attorneys,


/s/ Charles W. Rankin
_____

Charles W. Rankin, BBO No. 411780
Michelle Menken, BBO No. 644537
Rankin & Sultan
151 Merrimac Street
Boston, MA 02114
617-720-0011


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 11, 2006.

/s/ Charles W. Rankin
_____

Charles W. Rankin