UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
UNITED STATES                 )
                              )
        v.                    )        CRIMINAL 04-10384-PBS
                              )
DANIEL KAMEN,                 )
            Defendant.        )
_____)
```

### MEMORANDUM AND ORDER

June 12, 2007

Saris, U.S.D.J.

### INTRODUCTION

Defendant Daniel Kamen was convicted by a jury of knowing receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). At trial, the prosecution introduced a stipulation and confession that defendant ordered and received the videotapes that contained child pornography. Defendant introduced evidence that he suffered from erectile dysfunction and severe penile curvature since adolescence, that these problems were cured only after two surgeries, and that he was advised by his doctor to order pornography as part of his recovery regimen. There was also testimony that he suffers from Asperger's Syndrome, a mild form of autism. Defendant argued to the jury that the government failed to prove beyond a reasonable doubt that he knew the videotapes contained sexually explicit pictures of minors at the time of receipt.

Defendant contends that a new trial is warranted because the Court erred by refusing to give a requested jury instruction on a lesser included offense of possession of child pornography. Whether possession of child pornography is a lesser included offense of receipt of child pornography involves an issue of first impression.

Defendant has moved this Court, pursuant to Fed. R. Crim. P. 29(c) and 33, to (a) enter a judgment of acquittal, (b) grant a new trial in the interests of justice, or (c) vacate the conviction and enter a verdict of guilty on the lesser included offense of possession of child pornography. After oral argument, the Court **DENIES** the motion to enter a judgment of acquittal or to vacate the conviction and enter a verdict of guilty on the lesser included offense of possession of child pornography, but **ALLOWS** the motion for a new trial.

## FACTUAL BACKGROUND

Daniel Kamen was indicted on December 22, 2004 on one count of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). A jury trial commenced before this Court on October 30, 2006. Evidence was presented over the course of two days.

### 1. **The Government's Case**

The government's case consisted of two documentary exhibits: a joint stipulation of facts and a sworn statement written and

signed in Kamen's own hand for the United States Postal Inspector on the date of the defendant's arrest, December 6, 2004.

The stipulation offered by the government states the following:

    1. The Defendant agrees that the images in the videotapes listed in Count One depict child pornography and are, in fact, actual minors engaged in sexually explicit conduct. A "minor" is defined as a person less than eighteen years old. By the term "actual," the parties mean that the videos depicted minors who were not digitally created or altered.

    2. The video tapes which relate to the allegations in Count One were produced outside the Commonwealth of Massachusetts and mailed in interstate commerce.

    3. On September 30, 2004, in response to an undercover United States Postal Inspection Service operation, the United States Postal Inspection Service received a written request, order and full payment from the Defendant for the following three video cassette tapes: Kissing Cousins; Boys Will Be Boys; and Boys and Girls. The Defendant mailed that order to a fictitious video distribution company, YBCVids, run by the United States Postal Inspection Agency from P.O. Box 176, Clear Spring, Maryland, 21722. The parties further agree that the Defendant signed the order and included with the order a cash payment of $65.00 in United States currency. The Defendant's order listed the following address for delivery of the three video tapes: "82 Brick Kiln Road, Building 10, Apartment 104, Chelmsford, MA" which address was also listed as the return address on the envelope in which the order and payment was mailed through the United States mails.

    4. On December 6, 2004, and at all times relevant to the Indictment, the Defendant resided at that same address: 82 Brick Kiln Road, Building 10, Apartment 104, Chelmsford, MA.

    5. Prior to December 6, 2004, the United States Postal Inspection Service delivered a package containing the three aforementioned video tapes (which the Defendant had ordered) to a postal receptacle within his apartment complex and near his actual residence, with a written

notice to the Defendant that a package was present in the receptacle for him to retrieve.  On December 6, 2004, the Defendant retrieved those videotapes from the mail receptacle and took them into his residence.

6. Shortly thereafter, on December 6, 2004, United States Postal Inspectors conducted a search of the Defendant's residence and found the video tapes (titled Kissing Cousins, Boys Will Be Boys, and Boys and Girls) in the Defendant's possession.

7. On December 6, 2004, a United States Postal Inspector (Scott Kelley) advised the Defendant of his Miranda rights.  The Defendant waived those rights (both orally and in written form) and offered to fully cooperate with investigators in the matter.  The Defendant then wrote a statement.  The Defendant also orally admitted that he had ordered the three aforementioned video tapes through the United States mails (Kissing Cousins, Boys Will Be Boys, and Boys and Girls), that he knew that the images depicted minors and that the images he had ordered and received contained and depicted minors engaged in sexually explicit conduct.

The government also offered a signed statement from the defendant.  Of particular note, the document indicates that Kamen stated to the Postal Inspector:

I ordered videos of teenage boys to be delivered to my apartment ... I ordered them because I was curious about seeing a video of teenage boys.  I felt very dirty watching these and I am remorseful for ordering these. I am sorry for looking at these and realize that it is wrong and will promise to never look at pictures like this again.

The prosecutor did not seek to call any witnesses or introduce other evidence.

2.  **The Defense Case**

The defendant called three witnesses: Dr. Irwin Goldstein, Dr. Carol Ball, and Helene Kamen, defendant's mother.

Dr. Goldstein is a world-renowned urologist specializing in sexual medicine who treated Kamen through the Boston University Center for Sexual Medicine from January 2004 through February 2005. According to Dr. Goldstein, Kamen first came to his office because the defendant had "problems with curved erections and with erections that are only 50 to 60 percent of a rigid erection." (Tr. 15:2-4, Oct. 31, 2006.) Eventually, the doctor determined that Kamen had suffered from erectile dysfunction and severe penile curvature since early adolescence, which was caused by "a blocked artery to his penis." (Tr. 21:12, Oct. 31, 2006.) The curvature was so severe that sexual intercourse would have been all but impossible, and, indeed, Kamen remained a virgin at least until Dr. Goldstein ceased treatment in 2005.

A prior surgery by a different doctor to correct the penile curvature when Kamen was 16 years old had failed to correct the curvature, leaving the defendant scarred, physically and emotionally. Dr. Goldstein performed a second surgery in April 2004 in order to bypass the arterial blockage and to surgically straighten Kamen's penis. The doctor also oversaw Kamen's recovery to ensure that additional operations on the penis would not be required.

Dr. Goldstein testified that proper blood flow through the penis was critical to Kamen's physical recovery. According to the doctor:

The sort of issue with penises that are post-op is that

5

it's very important to provide oxygen to the tissues.
That's how we continue penile health. For a man who has
prostate cancer and has prostate cancer surgery, for 18
months we give them medications like Viagra on a daily
basis called 'penile rehabilitation.' The concept is to
continuously provide oxygen. The penis doesn't get
oxygen when it's sitting there not sexual. So for these
patients, the same as the prostate cancer patients, we
encourage erections. So we try and get patients to be
sexually active, if they have a partner, and if they
don't, to perform self-stimulation post-op.

(Tr. 29:10-21, Oct. 31, 2006.)

To that end, he prescribed an indefinite course of a

Viagra-like drug which would cause regular erections and

encouraged Kamen to become sexually active. Dr. Goldstein

learned through a series of follow-up visits that Kamen was not

engaging in sexual activity of any kind; the physician's notes

frequently lamented that "not too much has changed since his last

visit in the context of getting a partner and becoming sexual."

(Tr. 31:2-3, Oct. 31, 2006.) He continued to advocate strongly

that Kamen at least masturbate regularly, ultimately counseling

that Kamen try using pornography to stimulate interest. In

particular, the doctor's notes indicate that Dr. Goldstein

remarked to the defendant, "He [Kamen] is not, however, sexual.

He does not masturbate and does not feel the need to masturbate.

I discussed the issue of going to procure some pornographic

materials such as at Grand Openings [an adult bookstore] ... in

Brookline to aid him in starting to masturbate and gain

self-confidence and erectile function." (Tr. 33:12-25, Oct. 31,

2006.)

6

Shortly after Dr. Goldstein suggested that he procure this pornographic material as part of his recovery regimen, the defendant acquired the illegal videos from the U.S. Postal Inspection Service.  Kamen was arrested soon after he received these videos.

As a result of these physical maladies, Dr. Goldstein further opined that the defendant suffered from significant psychological difficulties.  According to Dr. Goldstein, Kamen "continues to feel distressed and embarrassed about the penile curvature." (Tr. 16:20-21, Oct. 31, 2006.)  As a result, Kamen's urologist remarked, "The patient is depressed and has some vague suicidal ideation.  He is not suicidal at this time.  However, he is under the care of a psychiatrist and is currently taking Celexa for depression.  He has had two overdoses in the past, although describes these as attempts to numb his pain rather than attempts at ending his life."  (Tr. 17:3-9, Oct. 31, 2006.)  The doctor further testified that he "strongly encourage[d] patient to continue with his psychiatrist and to continue therapy as an adjunct to medication.  I have concerns for his safety over the long term should his physical problem remain."  (Tr. 17:11-14, Oct. 31, 2006.)

The second defense expert witness, Dr. Carol Ball, was a psychologist engaged in the treatment of people with problematic sexual behaviors.  She had treated Kamen from January 2005 through the date of the trial.  After her initial consultation

with the defendant, Dr. Ball noted that "there seemed to be evidence of a neurological disorder" in Kamen.  (Tr. 60:21-22, Oct. 31, 2006.)  After examinations were conducted by Dr. Ball and several other doctors, which canvassed the defendant's medical and personal history, Dr. Ball concluded that Kamen suffered from a neurological disorder, a substrate of the Autistic spectrum best characterized as Asperger's Syndrome. Asperger's Syndrome, according to Dr. Ball, is a "pervasive developmental disorder" akin to autism, (Tr. 75:23-24, Oct. 31, 2006.), characterized by "someone who's sort of socially retarded.  They may be able to get an A in history because they can remember those facts, but how do they interact with people, and how do they understand the social realm in which we live?" (Tr. 74:18-22, Oct. 31, 2006.)

Based on her tests and observations, Dr. Ball determined, "Aside from the major depression mood disorder, I also believe that he [Kamen] has this neurological disorder of Asperger's." (Tr. 78:9-11, Oct. 31, 2006.)  Expounding upon this opinion, Dr. Ball noted:

> Some of the [Asperger's symptoms] that were evident in his history was this sort of obsessive single-mindedness about certain things, like the birds and the gambling and the computer.  Those are all -- you get sort of fixated on those kinds of things.  This sort of lack of facial expression, sort of a mask-like appearance.  The understanding social customs, he's socially awkward and stiff in interactions.  And particularly I think it's important to point out this naivete, where he just doesn't understand the consequences of his behavior very often.

8

(Tr. 78:14-23, Oct. 31, 2006.)  In this way, Dr. Ball characterized the defendant as being developmentally delayed, and socially immature, with an extremely deficient awareness of social custom.  In addition, Dr. Ball suggested that Kamen's Asperger's Syndrome may cause him to be extremely susceptible to suggestion and overeager to please others.  Nevertheless, she emphasized that notwithstanding Kamen's retarded social development, the results of a battery of psychological tests showed sexual interest in adult, mature males and females, and no sexual interest in children.

Finally, the defense presented testimony from Helene Kamen, the defendant's mother.  After briefly recounting her son's physical difficulties, she described how her husband, the defendant's father, abused and frequently humiliated her son.  According to Ms. Kamen, the defendant's father "engaged in inappropriate behavior, which usually embarrassed Dan."  (Tr. 103:21-22, Oct. 31, 2006.)  As a result, there was "basically no relationship between the two of them, so Dan would not talk to his father.  There would be no interaction, and he would just sit down, eat, and leave the table as quickly as possible."  (Tr. 103:15-18, Oct. 31, 2006.)  In addition, Ms. Kamen testified that her son was slow to develop and was frequently "isolated."  (Tr. 105:10, Oct. 31, 2006.)

### 3.  **The Charge and Deliberations**

At the conclusion of trial, the defendant requested an instruction on a lesser included offense.  Specifically, the defendant argued that possession of child pornography, 18 U.S.C. § 2252(a)(4)(B), was a lesser included offense of receipt of child pornography, 18 U.S.C. § 2252(a)(2), the crime for which he was indicted.  The Court rejected this request for an instruction on possession of child pornography, instructing the jury only on the elements of 18 U.S.C. § 2252(a)(2).

During its lengthy deliberations, the jury asked the Court to "provide a more explicit, written definition of the word 'knowingly' in the context of element number one (1) of the charge [for knowing receipt of child pornography]."  The jury also requested that the Court "further clarify what is meant by 'consideration of mental condition.'" In response, the Court instructed the jury to "listen to the tape-recording [of the original jury charge] again concerning the word knowingly." After further deliberations, the jury convicted the defendant.

In his Rule 33 motion for a new trial, the defendant argued that the Court erred in its decision not to charge on the lesser included offense of possession of child pornography.  On January 19, 2007, this Court granted the defendant a new trial in the interests of justice.  The government moved this Court to reconsider its order, which this Court rejected on April 30, 2007.

10

## **DISCUSSION**

Fed. R. Crim. P. 33 provides: "Upon the defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice so requires."  The First Circuit has cautioned that "[t]he remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice." United States v. Indelicato, 611 F.2d 376, 387 (1st Cir. 1979) (quoting United States v. Leach, 427 F.2d 1107, 1111 (1st Cir. 1970)) (internal quotation marks omitted).  See United States v. Rivera Rangel, 396 F.3d 476, 486 (1st Cir. 2005) (stating that a new trial should not be granted "because [the trial court] would have reached a different result"); see also United States v. Glantz, 810 F.2d 316, 321 (1st Cir. 1987) (new trial not appropriate to correct minor flaws in a trial process that "although imperfect ... adequately protected [the] defendant's rights").

### **1.  Lesser Included Offense**

Fed. R. Crim. P. 31(c) states that a "defendant may be found guilty of an offense necessarily included in the offense charged."  This rule "protects a defendant from an improper conviction in situations where a jury, although dubious about whether the prosecution has proved an indispensable element of the crime charged in the indictment, nevertheless considers the defendant to be guilty of some crime - and is, therefore,

11

reluctant to acquit." United States v. Flores, 968 F.2d 1366,
1369 (1st Cir. 1992); see also Schmuck v. United States, 489 U.S.
705, 717 n.9 (1989). The Supreme Court has established that a
court should use the "elements test" to determine when a lesser
included offense instruction is cognizable under the law. See
Schmuck, 489 U.S. at 716; see also United States v. Mena, 933
F.2d 19, 29 (1st Cir. 1991) (describing the elements test).

   The determination of whether a crime is a lesser included
offense of the charged offense must be made by comparing the
statutory elements of the proposed lesser included offense to
those of the charged offense, "not ... by reference to conduct
proved at trial." Schmuck, 489 U.S. at 716-17. An offense
constitutes a lesser included offense only if the elements of the
proposed lesser offense "are a subset of the elements of the
charged offense." Id.; see also Flores, 968 F.2d at 1369 ("To
pass the [Schmuck] test, all the elements of the lesser included
offense must be elements of the charged offense – but the charged
offense must contain at least one additional element.").

   In applying the elements test to this inquiry, Schmuck
essentially borrowed the analytical approach of Blockburger v.
United States, 284 U.S. 299 (1932), under which courts compare
statutory elements to determine whether two statutes create a
single offense for purposes of double jeopardy. See United
States v. Browner, 937 F.2d 165, 171 (5th Cir. 1991)
("Traditional Blockburger double jeopardy analysis mirrors the

statutory elements test used to determine when an offense is lesser included in a greater offense for the purpose of a jury instruction."). As under <u>Blockburger</u>, an offense constitutes a separate offense – and therefore not a lesser included offense – if the alleged lesser offense contains at least one element that the charged offense does not. See <u>Schmuck</u> 968 F.2d at 721-722; <u>see also</u> <u>United States v. Laguna-Estela</u>, 394 F.3d 54, 56-57 (1st Cir. 2005)(describing <u>Blockburger</u> inquiry as "requir[ing] a determination whether each offense requires an element of proof that the other does not").

   2.  **The Statute**

     Broadly, 18 U.S.C. § 2252 criminalizes activities relating to material involving the sexual exploitation of minors.  In particular, this statute seeks to punish both the receipt (§ 2252(a)(2)) and possession (§ 2252(a)(4)(B)) of child pornography.  The receipt provision under which the defendant was convicted, 18 U.S.C. § 2252(a)(2), punishes any person who:

> <u>knowingly receives</u>, or distributes, any visual depiction
> that has been mailed, or has been shipped or transported
> in interstate or foreign commerce, or which contains
> materials which have been mailed or so shipped or
> transported, by any means including by computer, or
> knowingly reproduces any visual depiction for
> distribution in interstate or foreign commerce or through
> the mails, if--
>       (A) the producing of such visual depiction involves
>       the use of a minor engaging in sexually explicit
>       conduct; and
>       (B) such visual depiction is of such conduct

(Emphasis added).

13

The possession portion of the statute, 18 U.S.C.

§ 2252(a)(4)(B) punishes any person who:

> <u>knowingly possesses</u> 1 or more books, magazines,
> periodicals, films, video tapes, or other matter which
> contain any visual depiction that has been mailed, or has
> been shipped or transported in interstate or foreign
> commerce, or which was produced using materials which
> have been mailed or so shipped or transported, by any
> means including by computer, if--
>> (i) the producing of such visual depiction involves
>> the use of a minor engaging in sexually explicit
>> conduct; and
>> (ii) such visual depiction is of such conduct

(Emphasis added).  The crime of receipt of child pornography, 18

U.S.C. § 2252(a)(2), carries a mandatory minimum sentence of 5

years.  <u>See</u> 18 U.S.C. § 2252(b)(1).  By contrast, the crime of

possession of child pornography, 18 U.S.C. § 2252(a)(4)(B), lacks

a mandatory minimum sentence.  <u>See</u> 18 U.S.C. § 2252(b)(2).

The government contends that the possession offense

identified in § 2252(a)(4)(B) fails under the <u>Schmuck</u> test to

describe a lesser included offense of receipt as set forth in

§ 2252(a)(2).  "Although the provisions overlap," the government

argues, "the distinguishing element of § 2252(a)(4) – possession

of certain images of minors engaged in sexually explicit conduct

– appears nowhere in § 2252(a)(2), which instead addresses itself

solely to the receipt and distribution of certain images."  The

government urges the Court to follow the well-known canon of

statutory construction that congressional use of different

language in different sections of a statute is "presumed to be

intentional and deserves interpretive weight." <u>See</u> <u>Flores</u>, 968

14

F.2d at 1370-71 (declining to infer for purposes of elements test that an assault on a flight attendant "necessarily interferes with the attendant's duties" where Congress addressed interference with flight attendants in a separate provision) (emphasis omitted).

The defendant counters, "The only material distinction among the crimes is the use of the term 'possession' in one, versus the use of the term 'receipt' in the other." In addition, the defendant, citing to a number of cases involving drug and gun laws, argues that "receipt" amounts to "acceptance plus possession." See United States v. Ladd, 877 F.2d 1083, 1087-88 (1st Cir. 1989) (canvassing firearm and stolen property cases); see also United States v. Romm, 455 F.3d 990, 1001 (9th Cir. 2006) (defining receipt of child pornography as the "knowing acceptance or taking of possession" of child pornography); United States v. Griffin, 705 F.2d 434, 437 (11th Cir. 1983) (stating that "receipt" of a firearm "means more than simple possession and means 'to get, to take, to acquire, [or] be the recipient of' at a particular time). Accordingly, because a person can possess an item without acquiring it (but not the converse), the defendant contends that the elements test is satisfied, and a lesser included offense instruction is warranted under the law.

No court has yet directly examined the question of whether possession of child pornography is a lesser included offense of the similar offense of receipt of child pornography. However,

this is not a novel issue in other areas of criminal law.  For example, in analogous context of gun prosecution, courts have held that such a relationship exists.  In a felon-in-possession case, the Supreme Court distinguished the terms "possession" and "receipt."  <u>Ball v. United States</u>, 470 U.S. 856 (1985).  The Court explained that "proof of illegal receipt of a firearm necessarily includes proof of illegal possession of that weapon," since "a felon who receives a firearm must also possess it," yet "the converse may not be true.  For example, a felon may possess a firearm without having 'received' it; he may have manufactured the gun himself."  <u>Id.</u> at 862 & n.9 (citing <u>United States v. Martin</u>, 732 F.2d 591, 592 (7th Cir. 1984)).

Several dictionaries lend support to this distinction between possession and receipt.  According to <u>Black's Law Dictionary</u>, the verb "receive" is defined as "To take into possession and control; accept custody of; collect."  <u>Black's Law Dictionary</u> 1268 (6th ed. 1990).  Similarly, "receive," as defined by the <u>Oxford English Dictionary</u>, is "[t]o take into one's hand, or into one's possession (something held out or offered by another); to take delivery of (a thing) from another, either for oneself or for a third party."  <u>Oxford's English Dictionary</u> 2d 314 (1989); <u>see also</u> <u>United States v. Mohrbacher</u>, 182 F.3d 1041, 1048 & n. 5 (9th Cir. 1999) (citing definitions of "receipt" in considering whether downloading of pictures could constitute receipt of child pornography as opposed to transportation of

16

child pornography and finding that downloads are considered receipt).

Because receipt of child pornography necessarily entails possession, but possession of child pornography does necessarily require receipt, defendant's motion is in the Ball park. Receipt equals possession plus the additional element of acceptance, rendering possession a lesser included offense of receipt under the Schmuck test. Cf. United States v. Morgan, 435 F.3d 660, 662-63 (6th Cir. 2006) (stating in dicta that a defendant who was initially charged with receiving child pornography under 18 U.S.C. § 2252A(a)(2) ultimately "entered an oral conditional plea of guilty to possessing images depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252A(a)(5)(B), a lesser-included offense of the charged violation."[1]) (emphasis added); United States v. Kuchinski, 469 F.3d 853 (9th Cir. 2006) (while rejecting a double jeopardy argument on a technical grounds, stating that the argument that a prosecution for possession of child pornography barred trial on a receipt of child pornography charge has some plausibility on its face under the Blockburger test).

The government, relying on United States v. Franchi-Forlando, 838 F.2d 585, 591 (1st Cir. 1988), argues that the

---

[1] While there are some differences between 18 U.S.C. § 2252A, which was the subject of Morgan, and 18 U.S.C. § 2252, which is the subject of the present discussion, these differences are not material.

existence of an affirmative defense, applicable only to possession, provides a strong basis for concluding that the Schmuck elements test is not met.[2]  This argument presents the difficult analytical problem of whether, in applying the elements test, the Court should consider matters of affirmative defenses. In Franchi-Forlando, the defendant had argued that two of his convictions constituted multiple punishments for the same offense in violation of the double jeopardy clause.  The two statutory provisions at issue criminalized unauthorized importation of controlled substances.  The first statute prohibited importation of narcotics "unless importation ... [was] approved by the Attorney General," and the other prohibited importation of narcotics "unless such substance or drug is a part of the cargo entered in the manifest."  Franchi-Forlando, 838 F.2d at 589

---

[2] The statute provides an affirmative defense that applies only to the crimes enumerated by 18 U.S.C. § 2252(a)(4):
> (c) Affirmative defense.  It shall be an affirmative defense to a charge of violating paragraph (4) of subsection (a) that the defendant--
>> (1) possessed less than three matters containing any visual depiction proscribed by that paragraph; and
>> (2) promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any visual depiction or copy thereof--
>>> (A) took reasonable steps to destroy each such visual depiction; or
>>> (B) reported the matter to a law enforcement agency and afforded that agency access to each such visual depiction.

18 U.S.C. § 2252(c).

18

(citing 21 U.S.C. § 952(a) and 21 U.S.C. § 955). Rejecting this argument for various reasons, the First Circuit held:

> [W]e recognize that the language that asserts the "approved drug" portion of § 952 and the "listed in the manifest" portion of § 955 makes them exceptions to a general rule of liability. That is to say, the statutes introduce those portions with the words "unless" and "except," and the defendants may have to treat them as affirmative defenses. See United States v. Barrios, 457 F.2d 680, 681 (9th Cir. 1972) (finding that §952(a)'s "except" clause was an affirmative defense). Nonetheless, the language that makes the two statutes differ in scope does not refer to rare or unusual occurrences; thus, we do not see how or why the use of the words "unless" or "except" should make a difference. Indeed, Blockburger itself found a difference between two similar statutes based on the fact that one of them contained an affirmative defense. Blockburger 284 U.S. at 299, 52 S.Ct. at 180.

Id. at 591. Because each statutory provision required "proof of a fact that the other does not," the First Circuit decided that the two offenses were separate under Blockburger. Id.

In Blockburger, the Supreme Court held that two statutes required proof of a different element. Blockburger, 284 U.S. at 304. The Court explained: "Section 1 of the Narcotic Act creates the offense of selling any of the forbidden drugs except in or from the original stamped package; and section 2 creates the offense of selling any of such drugs not in pursuance of a written order of the person to whom the drug is sold. Thus, upon the face of the statute, two distinct offenses are created." Id. at 303-04. It summed up: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether

there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304.

Here, there is no argument that the affirmative defense is even applicable. Moreover, the statutory label of "affirmative defense" is not dispositive to this analysis here because this marker applies to different categories of defenses. Some affirmative defenses actually negate required elements of the crimes, while other affirmative defenses instead provide a justification sufficient to overcome or mitigate criminal liability. A third category of affirmative defenses involves individual exceptions to substantive crimes. See generally Martin v. Ohio, 480 U.S. 228, 237-238 (1987) (treating a defense that negates an element of a crime differently from other affirmative defenses); see also United States v. Hartsock, 347 F.3d 1 (1st Cir. 2003) (holding that an exception to a gun law was affirmative defense in the third category and not an element) (citing 1 LaFave, Substantive Criminal Law, § 1.8(c) (1986)). The parties have not briefed the issue of into which bucket this affirmative defense falls, though it seems that 18 U.S.C. § 2252(c) does not fall into the first category because this affirmative defense does not bear on the required elements of the prosecution's proof. Accordingly, the government's attempt to distinguish these laws based solely upon the presence of an affirmative defense must fail.

20

### 3.  <u>Evidence for Lesser Included Offense Instruction</u>

Having established that possession of child pornography is a lesser included offense of receipt of child pornography as a matter of law, the Court now turns to the equally tough question of whether the evidence would permit a rational jury to find the defendant guilty of the lesser offense and acquit him of the greater, such that an instruction would be warranted under Rule 31(c).  <u>Keeble v. United States</u>, 412 U.S. 205, 208 (1973); <u>United States v. Oreto</u>, 37 F.3d 739, 748 (1st Cir. 1994).  The First Circuit has steadfastly maintained that a "defendant is entitled to a jury instruction on her theory of the case so long as the theory itself is a cognizable one and the evidence of record, taken in the light most congenial to the theory, can plausibly support it."  <u>Flores</u>, 968 F.2d at 1367 (citing <u>United States v. McGill</u>, 953 F.2d 10, 12 (1st Cir. 1992)).

This is a close call.  Read together in a common sense way, the stipulation and confession support the government's position that defendant knew the videotapes depicted minors engaged in sexually explicit conduct, and that he ordered them because he was "curious about seeing a video of teenage boys."  The government introduced sufficient evidence to sustain a conviction for knowing receipt of child pornography.  Defendant points out that in paragraph seven he never admitted knowing the nature of the videotapes at the time he ordered and received them, and that

the stipulation must be construed as an admission of knowledge only at the time he was caught and gave the confession.  But only a strained reading would parse the tense of the verb in the attorney-crafted stipulation to mean that defendant admitted knowledge only <u>after</u> he received the tapes, but not at the time of ordering them.  The stipulation, read in conjunction with the confession, would permit a jury to reasonably infer that he had knowledge of the content of the films at the time he ordered the videotapes.

Nonetheless, defendant points to the strength of the evidence relating to Kamen's mental deficit and severe physical maladies to undercut the common sense interpretation of the stipulation and confession.  Although the defendant agrees that the videos he ordered, "Kissing Cousins," "Boys Will Be Boys," and "Boys and Girls," in fact contained visual depictions of minors engaging in sexual acts, defendant argues that the stipulation does not clearly specify <u>when</u> Kamen learned that these videos contained child pornography.  Furthermore, Kamen's confession - he claims he was "curious about seeing a video of teenage boys" - does not specify that he knew he was receiving videos of minors, just teenagers.  After all, an eighteen- or nineteen-year-old is still a teenager, yet "minor" is defined by statute as a person under the age of 18.  <u>See</u> 18 U.S.C. § 2256(1).  Moreover, a jury could have found that Defendant's Asperger's syndrome could have led to an overeagerness to please

22

the postal inspector with an apology or embellishment of his culpability at the time of the confession, or to a lack of understanding of what he actually ordered until he viewed it, or both. As such, a reasonable juror, giving weight to Kamen's Asperger's diagnosis and his horrific medical history, could reasonably have found that Kamen ordered the videos on the advice of his medical doctor[3] after the surgery (if-you-don't-use-it-you-lose-it), but that he did not realize that the videos contained minor teenagers engaged in sexually explicit acts until <u>after</u> he received and viewed the package. The jury question as to the meaning of "knowingly" signals that the jury was struggling with the issue of defendant's state of mind.

Indeed, this was precisely the scenario considered by the Seventh Circuit in <u>United States v. Myers</u>, 355 F.3d 1040 (7th Cir. 2004), which discussed the differences between receipt and possession of child pornography for sentencing purposes:

> The Supreme Court has held that the prohibition on receipt of child pornography in § 2252(a)(2) includes a scienter requirement, and therefore encompasses only situations in which the defendant knows that the material he is receiving depicts minors engaged in sexually explicit conduct. Accordingly, a person who seeks out only adult pornography, but without his knowledge is sent a mix of adult and child pornography, will not have violated that statutory provision. That same person, however, could be in violation of the possession provision of § 2252(a)(4)(B) if he or she decides to retain that material, thereby knowingly possessing it.

---

[3] To be clear, the doctor did not advise defendant to order child pornography.

Id. at 1042.  (internal citations omitted).

I conclude that the evidence, taken in the light most favorable to the defense's theory, can plausibly support a conviction for knowing possession and an acquittal for knowing receipt.  In light of the highly unusual circumstances in this difficult case, the Court concludes that the incorrect failure to instruct the jury on a lesser included offense constituted a "miscarriage of justice."  Indelicato, 611 F.2d at 387; see also United States v. Paniagua-Ramos, 135 F.3d 193 (1st Cir. 1998) (affirming grant of new trial where jury charge was prejudicial).

### 4.  **Entry of Guilty Verdict on Lesser Included Offense**

In his post-trial motions, Kamen also moved this Court to vacate the conviction and enter a verdict of guilty for the lesser included offense.  "If the jury finds the defendant guilty of the greater offense, the trial court may 'enter a judgment of conviction on a lesser-included offense when it finds that an element exclusive to the greater offense is not supported by evidence sufficient to sustain the jury's finding of guilt on the greater offense.'"  United States v. Dhinsa, 243 F.3d 635, 674 (2d Cir. 2001) (citing Gov't of the Virgin Islands v. Josiah, 641 F.2d 1103, 1108 (3d Cir. 1981)) see also United States v. LoRusso, 695 F.2d 45 (2d Cir. 1982).

In denying Kamen's motion for directed verdict on the receipt charge, this Court expressly found that the evidence to

24

convict under the greater offense of 18 U.S.C. §2252(a)(2) was sufficient.  Thus, this Court cannot vacate this conviction in order to enter a guilty verdict on the lesser included offense. Accordingly, this motion is denied.

### ORDER

The Court **ALLOWS** the defendant's Motion for a new trial but **DENIES** the defendant's motion for a judgment of acquittal and **DENIES** the defendant's motion to vacate the jury's verdict and enter a judgment of conviction on the lesser included offense of possession of child pornography [Docket No. 86].

The Court also **DENIES** the government's motion for reconsideration [Docket No. 93].

**S/PATTI B. SARIS**
United States District Judge