**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10384-PBS |
| | ) | |
| | ) | |
| DANIEL KAMEN, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION IN LIMINE TO CONFINE DEFENSE WITNESS TESTIMONY TO MATERIAL RELEVANT TO THE ELEMENTS OF THE CRIME OR PLAUSIBLE DEFENSES AND EXCLUDE INADMISSIBLE EVIDENCE**

The United States of America, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant United States Attorney Paul R. Moore, hereby respectfully submits this Motion which seeks to prevent the defendant from introducing testimony from medical experts and defendant's family members that is not relevant to the elements of the offense charged or any plausible defense thereto but rather is introduced purely to elicit sympathy for the defendant in a manner that would impermissibly affect the verdict.  Though it has not received any specific notice from the Defendant at this time, based on the initial trial in this matter the Government presumes that the Defense will call the same witnesses as the first trial or witnesses that will testify to substantially the same irrelevant information.

**A.     Only Testimony That Speaks to Defendant's Intent is Relevant Under Rules 401 and 402 of the Federal Rules of Evidence**

In this matter, the defendant is charged with Receipt of Child Pornography under 18 U.S.C. § 2252(a)(2), the elements of which are: (I) knowing receipt ; (ii) of a visual depiction

that has been mailed, shipped or transported in interstate commerce; (iii) where the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct.  Again, there is no dispute that elements (ii) and (iii) are satisfied here given the nature of the videos the defendant ordered and received and the Defense's willingness to stipulate to the same.

Presuming the tactical projectory of the previous trial, the only truly outstanding element on which the Defense can plausibly produce evidence is that of defendant's "knowing" receipt, that is of his intent (given the precise nature of the sole charge in the Indictment and the indisputability of the illicit nature of the pornographic material that Kamen received in interstate commerce, a fact to which the Defense previously stipulated, only testimony that addresses the Defendant's intent is relevant - certainly in terms of the testimony of the defendant's expert witness testimony).

Much of the expert testimony of Doctors Ball and Goldstein is *not* relevant to the material issue of intent.  Federal Rule of Evidence 401 defines relevant evidence as that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  The relevance of evidence is determined based on "its relationship to the elements of the offense and to any offered defenses." *United States v. Spinosa*, 982 F.2d 620, 629 (1st Cir. 1992).  As applied to this case, this means that only that evidence that tends to make Kamen's knowing receipt of the child pornography more or less probable is relevant.  Evidence that seeks to explain why Kamen might have been looking for pornography is simply not relevant and so should be excluded under Rule 402 of the Federal Rules of Evidence.  Furthermore, all testimony calculated to portray the defendant as an object worthy of the jury's pity because of an allegedly

difficult childhood, a history of penile dysfunction and a persistent mood disorder has even less claim to admissibility as it serves only to invite impermissible jury nullification.

Intent goes to what the defendant *knew*, not *why* he acted the way he did. The First Circuit has said that "evidence of a 'good' motive for violating the law is irrelevant if the defendant is in fact cognizant that the law is being violated by the proscribed actions, i.e., is capable of forming specific criminal intent." *United States v. White*, 766 F.2d 22, 24 (1st Cir. 1985). In *White*, the defense in a criminal drug prosecution sought to introduce psychiatric testimony that the defendant lacked specific intent: "because of the influence exerted upon her by her mother, she was unable to resist her mother's request for assistance, and was thus compelled to aid her in her drug dealing." *Id.* The First Circuit affirmed the district's court's proper exclusion of this evidence. As in *White*, Kamen's traumatic childhood and his arguably therapeutic desire to view the penises of teenage boys are irrelevant where, as here, the defendant is capable of forming the requisite intent. *See also United States v. Ahrendt*, CR-04-43-B-W, 2005 U.S. Dist. LEXIS 20343, at *8, *7 (D. Me. Sept. 16, 2005) (excluding expert testimony where "'[t]he essence of [the doctor's] opinion goes not to Mr. Ahrendt's intent, but to his motivation"). In *Ahrendt*, the defense was attempting to use expert testimony to negate the "knowing" element of a charge of conspiracy to distribute cocaine. Though the *Ahrendt* court ultimately used Rule 403 to exclude this motive evidence, the court also noted that "It is questionable . . . whether Dr. Aston's testimony would survive a Rule 401 analysis." *Id.* at *7.

On the basis of these standards, *none* of the eminent urologist's testimony is relevant. Even if it were undisputed that Dr. Goldstein gave Kamen a 'prescription' to obtain pornography

for the sake of his penile health, that information goes only to *why* Kamen might have been seeking pornography generally, *not* whether he knew that what he ordered from the USPS was child pornography, the key element in this case. Defense counsel has suggested that after Dr. Goldstein surgically fixed Kamen's penis, Kamen wanted to see if his penis finally looked like that of other "boys," thereby creating a tenuous connection between the surgery and explicit pictures of underage boys. But, again, even if the Court credits this theory, Kamen's post-operative desire to see a naked teenage boy still just goes to one of the reasons *why* Kamen ordered the pornography, not whether, when he ordered it, he knew that he would be seeing, not just a naked boy, but a naked boy engaging in sexually explicit conduct.

Far from even reaching the irrelevant issue of motive, there is no available argument for the relevance of Kamen's family history and persistent depression. The extensive testimony from the first trial about Kamen's childhood and his repeated suicide attempts do not make any material fact more or less likely. Though perhaps effectively painting the defendant as an unfortunate victim of circumstance, that testimony does not shed any light on intent.

**B.     The Medical and Family Testimony Should Be Excluded Under Federal Rules of Evidence Rule 403 For Its Tendency to Confuse the Issues and Mislead the Jury**

Even if the Court determines that defense expert testimony is in some way relevant, it should nonetheless be excluded under Rule 403 of the Federal Rules of Evidence because of its calculated tendency to confuse the issues and mislead the jury. F.R.E. 403.

Especially where wide-ranging medical evidence is likely to confuse the issue of lack of intent with theories of justification or excuse in the jury's eyes, as the evidence presented by Doctors Goldstein and Ball seems likely, if not designed, to do, any probative value it has is substantially outweighed by the risk of misleading the jury and so it should be excluded under

Rule 403.  The First Circuit has explicitly recognized the increased risk of confusion where, as here, psychiatric evidence purports to speak to the specific intent element of an offense. "Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's [sic] from focusing on the actual presence or absence of *mens rea*, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of *mens rea*." *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990) (internal quotations and citations omitted) (finding that district court rightly excluded evidence where defendant "failed to demonstrate how her psychiatric evidence would negate intent and not merely present a dangerously confusing theory of defense more akin to justification and excuse than a legally acceptable theory of lack of mens rea" (internal quotations omitted)).  Here the medical evidence does not support any *legally acceptable* theory of Kamen's lack of specific intent to receive child pornography.

      The desire to elicit jury sympathy is an equally impermissible basis for the introduction of this evidence and the risk of a nullified verdict on that basis further cautions exclusion under Rule 403.  In *Ahrendt*, the court expressed its concern that to allow the expert's testimony would be "effectively promoting jury nullification, an argument [defendant] is not entitled to make." *Ahrendt*, 2005 U.S. Dist. LEXIS 20343, at *9.  *See also Ford v. Nationwide Mut. Fire Ins. Co.*, 214 F. Supp. 2d 11, 15 (D. Me. 2002) (limiting amount of sympathy-inducing testimony about extent of plaintiff's injuries was proper under Rule 403 where sole issue was liability, not damages).  By inundating the jury with gory details of a painful surgery in the Defendant's

nether regions and a heartstring-tugging depiction of his socially awkward and lonely existence, the Defense seeks to cultivate in the jury a sense of pity that has no connection to any legal theory in the case. In addition, there is a substantial risk that such testimony could lead the jury to acquit the defendant out of a feeling of compassion despite evidence of Kamen's guilt under the law.

To the extent that the Court determines the doctors' testimony is not simply irrelevant or impermissibly confusing as a whole, the extent of the testimony on the Defendant's medical history, both psychiatric and urologic, should be carefully limited to avoid any unduly prejudicial effect prohibited by Rule 403. *See United States v. Shay*, 57 F.3d 126, 134 (1st Cir. 1995) ("Applying Rule 403, we conclude that the potential for prejudice cited by the court could have been prevented by appropriate limitations on the scope of Dr. Phillips's testimony."). Though the *Shay* court ultimately concluded that the district court erred in excluding expert testimony altogether, it noted the well-recognized dangers of exposing juries to the unrestricted pontifications of experts: "As the Supreme Court recently observed, 'expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'" *Id.* (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993) (further internal quotation omitted). The dangers are arguably even greater here where the jury will be subjected to a deluge of medical expert testimony on two separate topics, neither of which addresses any material element of the crime on which they will ultimately be charged by the Court with the responsibility of determining guilt or innocence.

**C.    Doctor Ball's Testimony About The Defendant's Naivete and Lack of Adequate Skepticism Should be Excluded Under Rule 704(b)**

Finally, Dr. Ball's testimony on the Defendant's Asperger's syndrome should be excluded because, even if creditable, such testimony goes directly to the mental state of the defendant, the only remaining element in the crime charged. Rule 704(b) of the Federal Rules of Evidence provides that "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." The First Circuit enforces this rule liberally. *See, e.g.*, *United States v. Valle*, 72 F.3d 210, 216 (1st Cir. 1995) ("Rule 704(b) prohibits *all* direct expert testimony concerning a criminal defendant's intent, regardless of the witness's field of expertise, so long as intent is an element of the crime charged.") (emphasis added).

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:   /s/ Paul R. Moore
       Paul R. Moore
       Assistant U.S. Attorney

DATE: March 14, 2008

## **CERTIFICATE OF SERVICE**

Suffolk, ss.                                                                 Boston, Massachusetts
                                                                             March 14, 2008

     I, Paul R. Moore, Assistant U.S. Attorney, do hereby certify that I have this day served this document, via electronic filing, to all parties on record and to counsel for the defendant in this matter.

                                                 /s/ Paul R. Moore
                                                 Paul R. Moore
                                                 Assistant U.S. Attorney