UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04-CR-10384-PBS

UNITED STATES

v.

DANIEL KAMEN

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS INDICTMENT**

**INTRODUCTION**

After the jury returned a verdict of guilty on the charge of receiving child pornography, the Court granted the defendant Daniel Kamen ["Kamen"] a new trial based on its failure to instruct the jury on the lesser-included offense of possession of child pornography. Kamen now moves to dismiss the indictment against him pursuant to the Double Jeopardy Clause. The government had a full and fair opportunity to present its case against him, and yet presented insufficient evidence to support a verdict. He cannot be subjected again to the strain and expense of public trial.

**STATEMENT OF RELEVANT FACTS.**

**I.       OVERVIEW OF THE CASE.**

Daniel Kamen was indicted on December 22, 2004, on one count of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). Trial commenced before the Honorable Patti

B. Saris and a jury on October 30, 2006. Evidence was presented over the course of two days. The government submitted two documentary exhibits tending to show that the defendant had ordered and received three videotapes by mail containing depictions of minors engaged in sexual conduct. A motion for a required finding of not guilty made at the close of the government's case and renewed at the close of all the evidence was denied. The jury returned a verdict of guilty on November 2, 2006. The defendant filed a motion for judgment of acquittal and motion for new trial, pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure, on November 9, 2006. After briefing and argument, the Court allowed the motion for new trial and denied the motion for judgment of acquittal on January 19, 2007. The new trial is currently scheduled to begin on September 15, 2008.

## II.     THE GOVERNMENT'S EVIDENCE.

The government's case was comprised of two documentary exhibits. The first was a list of seven stipulations of fact signed by the prosecutor, defense counsel, and the defendant, Daniel Kamen. The second was a sworn statement written and signed in Mr. Kamen's own hand at the behest of a United States Postal Inspector on the date of his arrest, December 6, 2004. The government did not call any witnesses.

On the key disputed issue of knowledge, the stipulations contained the following relevant provisions:

> 3.     On September 30, 2004, in response to an undercover United States Postal Inspection Service Operation, the United States Postal Inspection Service received a written request, order and full payment from the Defendant for the following three video cassette tapes: *Kissing Cousins; Boys Will be Boys;* and *Boys and Girls*. ...

> 7.     On December 6, 2004, [after the aforementioned tapes had been received by

the defendant and recovered during a search of the defendant's residence], a United States Postal Inspector (Scott Kelley) advised the Defendant of his *Miranda* rights.  The Defendant waived those rights (both orally and in written form) and offered to fully cooperate with investigators in the matter. The Defendant then wrote a statement.  The Defendant also orally admitted that he had ordered the three aforementioned video tapes through the United States mails (*Kissing Cousins; Boys Will be Boys;* and *Boys and Girls*), that he knew that the images depicted minors and that the images he had ordered and received contained and depicted minors engaged in sexually explicit conduct.

The written statement alluded to in Stipulation #7 was the same statement put in evidence at trial.  With respect to the knowledge element, Mr. Kamen's own words in that statement were as follows:

I ordered videos of teenage boys to be delivered to my apartment ... I ordered them because I was curious about seeing a video of teenage boys.  I felt very dirty watching these and I am remorseful for ordering these.  I am sorry for looking at these and realize that it is wrong and will promise to never look at pictures like this again.

The correspondence between Mr. Kamen and the United States Postal Inspection Service Operation was not put in evidence.


## ARGUMENT

### I.    CONSTITUTIONALLY INSUFFICIENT EVIDENCE WAS INTRODUCED AT TRIAL.

#### A.    Summary of Applicable Law.

##### 1.    Knowledge as element of crime of receiving child pornography.

An essential element of the crime of receiving child pornography is knowledge of both the sexually explicit nature of the material received and the age of the subjects involved.  18 U.S.C. § 2252(a)(2); *United States v. X-Citement Video*, 513 U.S. 64, 78 (1994).  The culpable knowledge

must be possessed at the moment of receipt in order to establish criminal liability upon receipt. *Compare X-Citement Video*, 513 U.S. at 69 (opining that Congress could not have intended to punish, for example, a retail druggist who returned an uninspected roll of film to a customer, which was later discovered to contain images of children engaged in sexually explicit conduct, for knowing distribution of child pornography). "Accordingly, a person who seeks out only adult pornography, but without his knowledge is sent a mix of adult and child pornography, will not have violated [§ 2252(a)(2)]." *United States v. Myers*, 355 F.3d 1040, 1042 (7th Cir. 2004).[1]

## 2.    Sufficiency of the evidence standard.

In evaluating whether the government presented sufficient evidence at trial, the reviewing court "ask[s] whether, viewing the evidence in the light most favorable to the jury's verdict, 'a rational factfinder could find that the government proved the essential elements of its case beyond a reasonable doubt'." *United States v. Godin*, --- F.3d ----, 2008 WL 2780646, *8 (1st Cir. 2008). The First Circuit has cautioned that, in conducting sufficiency review, "some degree of intellectual rigor is required; a reviewing court should not give credence to "evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative'." *Leftwich v. Maloney*, 532 F.3d 20, 24 (1st Cir. 2008). Evidence as to guilty knowledge "need not compel a finding of such knowledge in order to sustain a conviction," but there must be sufficient evidence to allow that "reasonable jurors could be convinced beyond a reasonable doubt that the defendants had guilty knowledge." *United States v. Flaherty*, 668 F.2d 566, 579 (1st Cir. 1981).

---

[1]    The Seventh Circuit noted that: "[T]hat same person [who sought adult pornography but obtained both adult and child pornography], however, could be in violation of the possession provision of § 2252(a)(4)(B) if he or she decides to retain that material, thereby knowingly possessing it." *Myers*, 355 F.3d at 1042.

**B.    Application of Law to Facts.**

    **1.    Introduction.**

Unusually, the government's evidence in this case was presented to the jury solely in the form of stipulated facts and a sworn statement written by Kamen.  Consequently, unlike most sufficiency evaluations, there are no credibility judgments that must be resolved in favor of the government.  Instead, this Court must parse the language of the stipulations and Kamen's statement to determine whether the government has introduced sufficient evidence to prove its case beyond a reasonable doubt.

The critical question is whether the government introduced sufficient evidence to prove beyond a reasonable doubt that, at the time Kamen received the videotapes, he knew that they contained sexually explicit images of minors.  In the government's case, there were three pieces of evidence that could potentially support such a conclusion: Stipulation #3 (regarding ordering of video), the sworn statement (regarding ordering of video),  and Stipulation #7 (regarding defendant's oral statement).  Upon close examination, none of these are sufficient to establish to prove culpable knowledge beyond a reasonable doubt.

    **2.    Evidence regarding ordering of tape: Stipulation #3 and Kamen's sworn statement.**

The evidence regarding Kamen's understanding at the time he ordered and then received the videos (but before he watched them) is limited.  Kamen knew the titles of the videos he had ordered were *Kissing Cousins*, *Boys Will be Boys*, and *Boys and Girls*.  Stipulation #3.  Kamen also admitted that he "ordered videos of teenage boys."  Together, these facts contribute nothing toward proving the government's case.  The titles of the videos do not indicate, in any way, that the videos illegally

involved minors.  "Boys" and "girls" are not synonymous with "minors."[2]  In the same way, "teenage" is not synonymous with "underage."  An 18- or 19-year-old male would qualify as a teenager, but not be underage.  *See* 18 U.S.C. § 2256(1) ("minor" is a person under the age of 18). Consequently, from these two pieces of evidence a reasonable juror could not infer, one way or another, whether Kamen intended to order videos of minors or realized at the time he received the videotapes that they involved minors.  This evidence contributed nothing to the sufficiency evaluation.

### 3.    Evidence of Kamen's oral statement: Stipulation #7.

Consequently, if sufficient evidence is to be found regarding Kamen's knowledge, at the time he received the videotapes, that they contained images of minors, it must come from his oral statement as described in Stipulation #7.  That stipulation stated in relevant part:

> The Defendant also orally admitted that he had ordered the three aforementioned video tapes through the United States mails (*Kissing Cousins; Boys Will be Boys;* and *Boys and Girls*), **that he knew that the images depicted minors and that the images he had ordered and received contained and depicted minors engaged in sexually explicit conduct.**

(*Emphasis added*).

This evidence is perfectly adequate for establishing the crime of possession of child pornography, but it falls short of establishing the charged crime of receipt of child pornography.  The crucial question is: when did Kamen realize that the images contained minors?  Did he know this at the time he received the videos?  Or did he realize this only after watching the videos upon receipt?  On this issue, the stipulation is silent.  Its language is ambiguous, and could be read either

---

[2]    There is, for example, a "popular series of sexually graphic DVDs" called "Girls Gone Wild," *United States v. Mantra Films*, 240 Fed. Appx. 372 (11th Cir. 2007), which is frequently advertised in cable infomercials.  The "girls" are presumably 18 or older.

that "he knew" at the time he received the images or "he knew" at the time he spoke to law enforcement.[3]

The Court has previously suggested that interpreting the stipulation to indicate that Kamen had knowledge only after receiving the videotapes is a "strained reading." Memorandum and Order (Docket No. 108) at 22. In this context, though, the precise issue is not what the best interpretation of the language in the stipulation is. Rather, the issue is whether a jury could conclude beyond a reasonable doubt that the knowledge referenced in the stipulation was at the time of the receipt. In other words, is interpreting the stipulation to say only that Kamen had knowledge at the time he gave his oral statement not merely strained but **legally unreasonable**? If this is a reasonable (though not the only) interpretation of the ambiguous language of the stipulation, which is assuredly is, then the government did not carry its evidentiary burden.

It would, of course, been easy to craft a stipulation to clarify this issue (if, indeed, it would have been accurate to do so). It need only say: "Kamen said that, at the time he received the videotapes, he knew that the images depicted minors ...." In the same way, the government was certainly free to present other evidence (if, indeed, it had any) that Kamen knew at the time he received the videotapes that they contained images involving minors. Nevertheless, the government chose to rest its case on this key point on nothing more than language in a stipulation that is, at best, ambiguous. This is certainly an unusual sufficiency analysis, but it is one caused entirely by the government's choice to present its case only through limited, imprecisely-worded, documents. The government's case must therefore be rejected as insufficient.

---

[3]     Indeed, a careful analysis suggests that if the stipulation was drafted to indicate knowledge at the time of ordering or receipt, it would have read: "... that he *had* known," to establish a parallel construction with "... he had ordered."

II.     **A MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS IS APPROPRIATE HERE PRIOR TO RETRIAL.**

A.     **Summary of Applicable Law.**

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The paradigmatic application of the double jeopardy application is when a defendant is acquitted by a jury at trial. In that situation, it is clear that the defendant cannot be tried again for the same crime. In other situations, however, the applicability of double jeopardy is less clear and the courts have struggled to construct a logical and consistent double jeopardy jurisprudence. *See* Sarah O. Wang, *Note: Insufficient Attention to Insufficient Evidence: Some Double Jeopardy Implications*, 79 Va. L. Rev. 1381 (1993). This is true especially for a defendant facing retrial after an initial trial at which insufficient evidence was presented.

1.     *Burks v. United States*.

The first seminal Supreme Court case in this area is *Burks v. United States*, 437 U.S. 1 (1978). There, the defendant was convicted in the district court, and on direct appeal the Sixth Circuit vacated the conviction, finding insufficient evidence. The Supreme Court held that Burks could not be retried under the Double Jeopardy Clause. It wrote:

> The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow "the State . . . to make repeated attempts to convict an individual for an alleged offense," since "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."

-8-

437 U.S. at 11 (*citations omitted*).  It went on to say that, in that situation, the prosecution "cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble."  *Id.* at 17.  It continued: "Given the requirements for entry of a judgment of acquittal, the purposes of the Clause would be negated were we to afford the government an opportunity for the proverbial 'second bite at the apple'."  *Id.* at 17.  Finally, it noted that a defendant's decision to move for a new trial did not waive the relevant double jeopardy rights.  It wrote:

> In our view it makes no difference that a defendant has sought a new trial as one of his remedies, or even as the sole remedy. It cannot be meaningfully said that a person "waives" his right to a judgment of acquittal by moving for a new trial.... Since we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only "just" remedy available for that court is the direction of a judgment of acquittal. To the extent that our prior decisions suggest that by moving for a new trial, a defendant waives his right to a judgment of acquittal on the basis of evidentiary insufficiency, those cases are overruled.

*Id.* at 17-18 (*citations omitted*).

### 2.  *Richardson v. United States*.

The Supreme Court's second seminal case, *Richardson v. United States*, 468 U.S. 317 (1984), complicated the seemingly-clear rule of *Burks*.  In *Richardson*, the defendant's trial ended in mistrial, and the defendant argued that a retrial was barred by double jeopardy as there had been insufficient evidence at trial.  The Supreme Court determined that, under *Burks*, double jeopardy protections are applicable "only if there has been some event, such as an acquittal, which terminates the original jeopardy."  468 U.S. at 325.  It then decided that declaration of a mistrial was not, in fact, "an event which terminates jeopardy."  *Id.*  It concluded: "Regardless of the sufficiency of the evidence at

-9-

petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial." *Id.* at 326.[4]

### 3.    First Circuit cases.

#### a.    *United States v. Porter.*

Some decisions of the First Circuit Court of Appeals have given an interpretation of double jeopardy right even narrower than that set out in *Richardson*. In *United States v. Porter*, 807 F.2d 21 (1st Cir. 1986), the defendant was convicted of conspiracy to distribute marijuana. On appeal, he argued that the district court had erred in admitting certain inculpatory statements. The First Circuit agreed, vacating the conviction and remanding the case. The defendant then moved to dismiss the indictment on double jeopardy grounds, arguing that the evidence was insufficient at the first trial. The district court denied the motion to dismiss, and Porter filed an interlocutory appeal. The First Circuit held that under the doctrine of "continuing jeopardy," Porter's "original jeopardy [had] never ended" and therefore there was no double jeopardy question. It concluded:

> Thus, we hold that where a conviction has been reversed due to trial error and a new trial ordered, and where, after remand, defendant raises a double jeopardy claim to bar his retrial, neither the district court, nor this court on an *Abney* [*v. United States*, 431 U.S. 651 (1977)] appeal, need examine the sufficiency of the evidence at the first trial.

*Id.* at 24.

#### b.    *United States v. Carpenter.*

The First Circuit expanded on *Porter* in *United States v. Carpenter*, 494 F.3d 13 (1st Cir. 2007). There, the defendant was convicted and subsequently filed motions for new trial and for

---

[4]    The Supreme Court apparently drew on the concept of "continuing jeopardy," which it had first developed in *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 315-316 (1984). Under this doctrine, the original jeopardy continues past the mistrial, so that the second trial is seen as merely a continuation of the first trial and not a second instance of the defendant being put in jeopardy.

judgment of acquittal. The district court denied the motion for judgment of acquittal but allowed the motion for new trial. The government appealed the grant of a new trial, and the defendant cross-appealed the denial of the motion for judgment of acquittal.

The key issue for the First Circuit was determining whether it had jurisdiction over Carpenter's cross-appeal. It noted that, under *Cohen v. Beneficial Industrial Loan Corp*, 337 U.S. 541 (1949) and the so-called "collateral order doctrine," interlocutory review was available for certain collateral issues. 494 F.3d at 25. Citing to *Porter*, though, the First Circuit found that it had no jurisdiction over the cross-appeal. It wrote:

> *Porter* teaches that a defendant has no double jeopardy claim when his conviction has been vacated for legal error. That is what occurred here. Although Carpenter's conviction was undone by the trial court rather than on appeal, this is a distinction without a difference.
>
>        Without a viable double jeopardy claim, Carpenter has no double jeopardy "right" that he cannot effectively vindicate if he is not permitted to challenge the sufficiency of the evidence in this appeal. Hence he cannot meet the third criterion of the collateral order doctrine.

*Id.* at 26 (*citations omitted*). Without jurisdiction, the court could not reach the substance of Carpenter's sufficiency claim, and dismissed his cross-appeal.

Despite this expansive language, however, the First Circuit took great pains to note that Carpenter had only appealed the denial of his motion for judgment of acquittal, and had not filed a separate motion in the District Court to dismiss under the Double Jeopardy Clause. It wrote:

> It is important to understand that Carpenter, in pursuing his cross-appeal, has invoked the principle of double jeopardy in the service of his primary argument that we should review the sufficiency of the evidence argument he makes in his cross-appeal. That is, Carpenter did not file a motion in the trial court arguing that his retrial was barred by the principle of double jeopardy. Indeed, there was no basis for any such argument. Hence, we are not reviewing a double jeopardy ruling by the trial court, or a claim that such a double jeopardy ruling itself falls within the collateral order doctrine.

-11-

*Id.* at 26 n.9. Similarly, in opposing Carpenter's petition for writ of *certiorari* in the Supreme Court,[5] the government relied on Carpenter's failure to file a motion to dismiss under double jeopardy. *See* Brief for the United States in Opposition to Petition for a Writ of *Certiorari* in No. 07-515, 2008 WL 194292 (January 23, 2008) ("The court of appeals noted that petitioner had not moved the trial court to dismiss the indictment on double jeopardy grounds and that the court of appeals was therefore 'not reviewing a double jeopardy ruling by the trial court'"; "petitioner did not move the district court to preclude a retrial on double jeopardy grounds, nor did he raise an independent double jeopardy claim in the court of appeals").

> **c.      *United States v. Gonzalez-Sanchez* and *Foxworth v. Maloney*.**

In other cases, though, the First Circuit has interpreted the double jeopardy protections much more broadly. In *United States v. Gonzalez-Sanchez*, 825 F.2d 572 (1st Cir. 1987), the First Circuit found reversible trial error. It went on to discuss the defendant's claim of insufficiency, however, concluding that such review was required by double jeopardy. It wrote:

> Although we have found other grounds to reverse his conviction, we must review his challenge of the sufficiency of the evidence **to ensure that he is not retried in violation of the double jeopardy clause**.

*Id.* at 588 (*emphasis added*). It ultimately concluded that sufficient evidence had been presented at trial and therefore retrial was not barred. *Id.* at 588-589.

In *Foxworth v. Maloney*, 515 F.3d 1 (1st Cir. 2008), the court addressed double jeopardy in the habeas context. There, the defendant had filed a 28 U.S.C. §2254 petition raising a *Bruton* claim and a sufficiency claim. The lower court granted the writ based on the *Bruton* error, but did not decide the sufficiency claim. The Commonwealth appealed. Although the petitioner did not cross-

---

[5]      Carpenter's petition was ultimately denied. 128 S.Ct. 1443.

appeal, the First Circuit decided to remand the case to the district court for determination of the sufficiency claim.  It wrote:

> If the district court reverses the conviction on insufficiency grounds, a retrial may prove unnecessary. *See Burks*, 437 U.S. at 18, 98 S.Ct. 2141. Given this possibility, the better practice is to err (if at all) on the side of preventing an unnecessary retrial. *Cf. United States v. González-Sánchez*, 825 F.2d 572, 588 (1st Cir.1987) (proceeding to review a challenge to the sufficiency of the evidence although having previously found other grounds for reversal of the conviction). This is the course of prudence, and it is the course that most courts follow.

*Id*. at 4.  It went on to note that this approach -- reaching a sufficiency issue even if the case could be decided on a narrower ground -- was widely followed, although there was a difference in opinion as to whether it was required as a matter of constitutional command or merely policy choice.  *Id*.

The First Circuit concluded:

> We think it represents sound policy and, so, we adopt as a prudential rule the policy of requiring district courts in habeas cases to address preserved challenges to evidentiary sufficiency even though the conviction must be reversed in all events for trial error. *Cf. United States v. Miller*, 952 F.2d 866, 874 (5th Cir.1992) (explaining that it is "clearly the better practice for the appellate court on an initial appeal to dispose of any claim properly presented to it that the evidence at trial was legally insufficient"); *United States v. Douglas*, 874 F.2d 1145, 1150 (7th Cir.1989) (noting policy of "routinely addressing evidentiary sufficiency in criminal cases" even if the conviction must be reversed for trial error).
>
> Let us be perfectly clear. Although we do not hold that the Double Jeopardy Clause compels the review of a properly preserved insufficiency claim before the petitioner is retried, *see, e.g.*, *Vogel*, 790 F.2d at 376, we do hold that, as a prudential matter, such claims (or, for that matter, other habeas claims for unconditional release with prejudice to reprosecution) ordinarily should be decided in a timely manner.

*Id*.[6]

## B.    Application of Law to Facts.

---

[6]    The First Circuit did not say that such review was not constitutionally required, only that it was adopting its course as a matter of policy.  It is therefore unclear whether the First Circuit decided that there was no constitutional right at play or merely found it unnecessary to reach that question.

It is perhaps astonishing that, given the importance of the Double Jeopardy Clause, that simple questions – regarding the scope of constitutional protection to a defendant facing retrial after a first trial at which insufficient evidence was presented – remain unanswered. Under governing Supreme Court and First Circuit precedent, there are at least two possible interpretations of the scope of double jeopardy protections applicable to cases like this one, neither of which comport completely with the case law. Nonetheless, it is clear that regardless of which interpretation this Court adopts, it has the power in this case to rule that the evidence at the defendant's first trial was insufficient and therefore that double jeopardy bars his retrial.

> **1.    First view -- A defendant has a double jeopardy right to avoid retrial after a trial ending in a guilty verdict in which insufficient evidence was presented, even if the District Court granted a new trial.**

The more logical position, and one arguably more respectful of the policy concerns behind the Double Jeopardy Clause, is that defendants like Kamen possess a double jeopardy right not to be retried after a trial ending in a guilty verdict in which insufficient evidence was presented and after the court granted a new trial on other grounds. In short, the prosecution has had its one "bite at the apple," has fallen short, and therefore cannot complain of any unfairness if the court determines that double jeopardy precludes it from getting another chance. After all, double jeopardy is intended to protect precisely against the hazards and expenses of repeated trials. *See Abney v. United States*, 431 U.S. 651, 661 (1977) ("the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense"). This was the position of the court in *United States v. Greene*, 834 F.2d 86 (4th Cir. 1987). There, even though the lower court had granted a new trial, the Court of Appeals reviewed the

-14-

defendant's appeal from the denial of his motion for judgment of acquittal.  It wrote:

> If Greene was entitled to a judgment of acquittal, this right is too important to be denied review, particularly since a retrial might result in twice placing him in jeopardy for the same crime. It is also a right that can be irreparably lost if review is postponed until final determination of the case, because by then Greene would have been put through the trauma and the expense of another trial.

*Id.* at 89.

This position is entirely consistent with Supreme Court precedent.  The Supreme Court has never said that the concept of "continuing jeopardy" utilized in *Richardson*, applies to a conviction based on a jury verdict of guilty, only that it applies to a mistrial.  The defendant contends that the jury verdict, unlike a mistrial, formally terminated initial jeopardy and therefore there is a double jeopardy right not to be tried again.

On the other hand, this position is in tension logically with the First Circuit's precedents in *Porter* and *Carpenter*, although neither case is directly on point legally.  In *Porter*, the First Circuit indicated that "continuing jeopardy" would apply to a grant of a new trial by an appellate court, and this seems quite similar to the grant of the new trial by this Court.  *Carpenter* seemed to address precisely the situation confronted here, with the only difference being that the defendant there attempted to pursue an appeal of the denial of a motion for judgment of acquittal and did not file a separate double jeopardy motion.  However, while this distinction may seem minor and of little relevance to the existence or nonexistence of a double jeopardy right, the First Circuit specifically drew attention to it and characterized it as "important" that Carpenter had not filed a double jeopardy motion.  494 F.3d at 26 n.9.  Consequently, this Court is not precluded by any controlling law from finding that, in this situation, Kamen has a double jeopardy right to avoid retrial, and can vindicate that right by means of a motion to dismiss.

2.     **Second view -- A defendant has no double jeopardy right to avoid retrial after a trial not ending in an acquittal unless some court rules that insufficient evidence was presented at trial.**

The alternative way of viewing the case law is that, after a trial not ending in acquittal, a defendant has no double jeopardy right to avoid retrial on the basis of insufficient evidence unless a court happens to rule that insufficient evidence was introduced at a first trial.[7]  In other words, if a court rules that there was insufficient evidence, then the double jeopardy right to avoid retrial springs into being, but if the court does not make such a ruling, then the right cannot be said to exist.

This interpretation is largely consistent with, though not mandated by, the Supreme Court's decision in *Richardson* and the First Circuit's opinions in *Porter* and *Carpenter*.  Under this interpretation, the reason Porter and Carpenter were not protected by the Double Jeopardy Clause against retrial is simply that they had not succeeding in having a court rule that the evidence was insufficient.  Without such a ruling, there was no double jeopardy right.  This interpretation is directly contradictory, however, to *Gonzalez-Sanches*, where the court stated that sufficiency review was required to ensure that the defendant was not retried "in violation of the double jeopardy clause," even though no court had yet said that evidence was insufficient.  825 F.2d at 588.  It is also in tension with the court's reasoning in *Foxworth*.  While not reaching the constitutional issue, the First Circuit indicated that a habeas court should conduct sufficiency review even if it could order a new trial on a narrower ground, as this would "prevent[] an unnecessary retrial."  515 F.3d at 4.  Under this interpretation, though, there should be nothing "unnecessary" about the retrial, as it is not barred by double jeopardy unless a court has already ruled that there was insufficient evidence.  In short,

---

[7]     This view is apparently taken by several Courts of Appeal.  *See*, *e.g.*, *United States v. Gutierrez-Zamarano*, 23 F.3d 235, 238 (9th Cir. 1994); *United States v. Wood*, 958 F.2d 963 (10th Cir. 1992); *United States v. Ganos*, 961 F.2d 1284 (7th Cir. 1992).

if the double jeopardy right does not exist, it is far from clear why it is "prudent" to bring it into existence by requiring a court to perform sufficiency review.[8]

Even more importantly, this interpretation of the scope of double jeopardy protection leads to truly anomalous and even unfair consequences. Consider the situation of a convicted defendant with both a potentially meritorious motion for judgment of acquittal and a certainly meritorious new trial motion. If the defendant asserts only the sufficiency issue in the lower court and on appeal, then she may succeed in having retrial permanently barred, but if she loses on the merits of the sufficiency argument she will have forfeited the opportunity to argue the legal issues that would have guaranteed a new trial. On the other hand, if the defendant presents both arguments, a court may reach only the new trial issues (or deny the sufficiency argument), may grant a new trial, and the defendant will never have an opportunity to have the sufficiency issue litigated (or reviewed by an appellate court). The defendant is forced to choose between a certain new trial and the uncertain possibility of forever being free from prosecution. This is an unfair choice, and cannot be justified by contending that presentation of the new trial issues "waives" the sufficiency claim, as that argument was specifically rejected in *Burks*, 437 U.S. at 18.[9] This interpretation also leads to an significant imbalance in

_____

[8]    Such a rule is certainly defendant-friendly, but it does not seem to be particularly prudent or imprudent when seen from a systemic perspective. It simply reduces the number of trials.

[9]    In the context of this case, Kamen had at the conclusion of trial the option of litigating the sufficiency issue in this Court and the Court of Appeals on direct appeal or filing also a motion for new trial in this Court. If the sufficiency issue were to be found meritorious in the Court of Appeals, Kamen would forever be free from retrial in this case. However, under this interpretation of double jeopardy, by filing a meritorious new trial motion Kamen somehow lost, forever, the right to appellate determination of the sufficiency of the evidence at his first trial. In other words, by filing a *meritorious* new trial motion Kamen may have lost an opportunity to be free from retrial. This prompts the curious question of whether Kamen's attorneys were somehow ineffective in filing a meritorious and successful new trial motion instead of merely litigating the direct appeal!

appellate rights: if a sufficiency challenge is granted by the lower court, then the double jeopardy right springs into existence and the government can have full *de novo* review of the issue in the Court of Appeals. If, however, the lower court denies all sufficiency challenges, then there is no double jeopardy right and the Court of Appeals will never reach the issue.[10]

Finally, this view of double jeopardy flies in the face of customary understandings of constitutional law. In all other areas of constitutional law, a defendant either has a right or does not have a right. A reviewing court is tasked with determining whether that right exists, but the actions of the reviewing court do not themselves bring that right into being. It is striking that no court has provided a plausible explanation for why this particular right should be treated in such a distinct, and counter-intuitive, fashion. The interpretation can also lead to spectacular unfairness if an appellate court errs. For example, in *Patterson v. Haskins*, 470 F.3d 645 (6th Cir. 2006), the Sixth Circuit had ruled in an earlier decision that Patterson should be granted a writ of habeas corpus on the basis of trial error, but did not reach his sufficiency claim. Prior to a subsequent retrial, the defendant argued to the Sixth Circuit that it should have reached his sufficiency claim, in which case (had it found that claim meritorious), retrial would have been barred. The Sixth Circuit agreed that it should have

---

[10]    This certainly suggests that a lower court should err on the side of granting a defendant's post-verdict sufficiency challenge. If the lower court errs in granting the challenge, then the government has full appellate rights and the Court of Appeals can rectify the error and return the case to its *status quo ante* with no unfairness to the government. If, on the other hand, the lower court errs in denying the challenge, then there is no avenue for defendant to appeal and the error will never be rectified.

In the event this Court denies the instant motion, Kamen intends to pursue interlocutory review in the First Circuit and, if necessary, the Supreme Court to clarify and/or overrule any precedent that would deny him the right to appeal and obtain *de novo* review of the sufficiency issue. Of course, under the first interpretation of double jeopardy set out herein, Kamen already has a right to pursue interlocutory review.

reached the sufficiency claim in its first decision, and that its failure to address that issue deviated from circuit precedent. It agreed that, had it reached the sufficiency claim and found it meritorious in its first decision, retrial would have been barred. It held, however, that since it mistakenly never reached that issue, the petitioner did not have a valid double jeopardy claim. The court gave a concise summary of its view of double jeopardy animating this conclusion: "[W]hat activates the *Burks* rule is not the abstract possibility that the evidence was insufficient, but the appellate court's declaration to that effect." *Id.* at 657. In other words, even though the court had erred in failing to consider the sufficiency of the evidence (and therefore in failing to bring a double jeopardy right into being), the simple fact that it never considered this issue means that defendant had no applicable double jeopardy right. It wrote:

> Federal courts are not often forced to issue what amounts to a mea culpa. An error that we committed three years ago, however, has forced us to do just that. Today's decision is all the more distressing because we have had to recognize not only that we made a mistake, but also that we cannot correct our error at this late date.

*Id.* at 669. *See also United States v. Bobo*, 419 F.3d 1264 (11th Cir. 2005) (same). This absurd result -- where a court recognized that its own actions harmed a defendant but cannot correct the mistake -- flows directly from the unusual idea that the right in question is not inherent but comes into existence only if a court happens to say that it exists.

### 3. Conclusion.

Regardless of whether this Court adopts the first or the second view of the double jeopardy protections, it is clear that this Court can and should grant this motion to dismiss. Under the first interpretation of double jeopardy, if the evidence at the first trial was insufficient, Kamen has a double jeopardy right to avoid retrial, and this motion is the most appropriate vehicle for vindicating

that right.  Under the second interpretation of double jeopardy, Kamen is entitled to avoid retrial if this court (or any other court) rules that the evidence at the first trial was insufficient.[11]  By allowing the motion, this Court would both be finding the evidence insufficient and finding that, as a result of that finding of insufficiency, double jeopardy bars retrial.  The Court would be acting as the First Circuit did in *Foxworth*, acting "prudently" to reach a sufficiency issue in order to trigger a double jeopardy right that would avoid an expensive and time-consuming retrial.

**CONCLUSION**

For the reasons detailed above, this Court should rule that the government's evidence against the defendant at his first trial was constitutionally insufficient and therefore that retrial is barred by the Double Jeopardy Clause.  This indictment against the defendant should be dismissed.

---

[11]    Neither *Carpenter* nor *Porter* suggests that a district court cannot rule that insufficient evidence was presented, thereby triggering the double jeopardy right to avoid retrial.  In *Porter*, the court indicated that, in some contexts, such analysis did not "need" to be performed, but did not prohibit it.  807 F.2d at 24.  In *Carpenter*, the First Circuit held that it simply did not have jurisdiction over the case (and therefore could not pass on the sufficiency issue even if it wanted to).  Here, there is certainly no question that this Court has jurisdiction.

Respectfully submitted,
**DANIEL KAMEN**
By his attorneys,

/s/ Charles W. Rankin

_____
Charles W. Rankin, BBO No. 411780
Michelle Menken, BBO No. 644537
Jonathan Harwell, BBO No. 662764
Rankin & Sultan
151 Merrimac Street
Boston, MA 02114
617-720-0011

# CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 22, 2008.

/s/ Charles W. Rankin

_____
Charles W. Rankin

-21-